UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

Z.H.,

    Plaintiff,

v.                                                    Case No. 3:21-CV-101 JD

OFFICER JAMIE GARCIA and CHIEF JOHN DOUGHTY,

    Defendants.

## OPINION AND ORDER

Plaintiff Z.H. sued Defendants Officer Jamie Garcia and Chief John Doughty of the Hammond Police Department in their individual capacities under 42 U.S.C. § 1983. Z.H. alleges that Officer Garcia violated her Fourteenth Amendment substantive due process right and the Equal Protection Clause during a ride-along in his police car by subjecting her to unwanted touching, insinuating comments, and otherwise degrading behavior.[1] She also claims that Chief Doughty is liable for Officer Garcia's conduct because he failed to train or supervise him.

Defendants Garcia and Doughty moved to dismiss the complaint for failure to state a claim and judgment on the pleadings. If the allegations in the complaint are true, Officer

---

[1] In her complaint, Z.H. also alleges that Officer Garcia falsely imprisoned her in violation of the Fourth Amendment, but she has now withdrawn that claim. (DE 21 at 10.)

Garcia's conduct toward Z.H. was reprehensible and worthy of discipline. It may have further implicated state law considerations, but this lawsuit brings claims only under the Fourteenth Amendment of the United States Constitution, which has a limited scope and which does not encompass Z.H.'s grievance. Accordingly, the Court will grant Defendants' motions to dismiss.

### A. Statement of Facts

Z.H. alleges that Officer Garcia sexually harassed her while she participated in a ride-along in his police car, and that Chief Doughty knew or should have known that Officer Garcia had a history of sexual misconduct and failed to prohibit the ride-along. Z.H. seeks punitive damages against Officer Garcia in addition to compensatory damages and attorneys' fees against both Defendants. (DE 1 at 6–7.)

Z.H. was a seventeen-year-old student at Ancilla College in Plymouth, Indiana, when she participated in a ride-along with Officer Garcia on February 15, 2019. (*Id.* ¶ 9.) Z.H. needed to participate in a ride-along as part of her studies and knew Officer Garcia. (*Id.*) Officer Garcia picked her up at Ancilla College and drove her to the Hammond Police Department. (*Id.* ¶¶ 10–11.) Officer Garcia showed her around and introduced her to several other officers. (*Id.* ¶ 12.) As Officer Garcia prepared for his shift, Z.H. observed him take several guns from his personal car and put them in his police vehicle. (*Id.* ¶ 14.)

During the ride-along, Officer Garcia touched Z.H. without consent on several occasions. After Z.H. got into his police car and put on her seat belt, Officer Garcia adjusted her seat belt and rubbed his arm against Z.H.'s breast. (*Id.* ¶¶ 15–16.) At various times while driving around, Officer Garcia placed his hand on Z.H.'s leg without her consent. (*Id.* ¶ 20.) At one point,

Officer Garcia and Z.H. got out of the car and were in line at a gas station. (*Id.* ¶¶ 18–19.) While in line, Officer Garcia put his hand on Z.H.'s buttock without her consent. (*Id.* ¶ 19.)

Throughout the ride-along, Officer Garcia asked Z.H. about her dating and sex life. (*Id.* ¶ 28.) While driving around, Officer Garcia found a prostitute, introduced her to Z.H., and told her that Z.H. wanted to do what she was doing. (*Id.* ¶ 27.) Officer Garcia also made an arrest with other responding officers during the ride-along. (*Id.* ¶ 21.) After that arrest, Officer Garcia drove Z.H. to a secluded location and met another officer there. (*Id.* ¶¶ 22–23.) Officer Garcia asked the other officer if he wanted to have sex with Z.H and repeated the question more than once. (*Id.* ¶¶ 24–25.) Z.H. felt scared and offended by Officer Garcia's conduct. (*Id.* ¶ 24.) At some point, the ride-along ended.

After Z.H.'s ride-along, Z.H.'s female classmate also went on a ride-along with Officer Garcia. (*Id.* ¶¶ 29, 33.) The classmate contacted Z.H. to ask about Officer Garcia's conduct toward Z.H. on her ride-along, and both reported their experiences to a teacher. (*Id.* ¶¶ 30–31.) That information was reported to the Hammond Police Department. (*Id.* ¶ 31.)

Chief Doughty was the police chief of the Hammond Police Department at the time of Z.H.'s ride-along. (*Id.* ¶ 6.) Chief Doughty knew that Officer Garcia was being sued for sexual misconduct at the time of the ride-along. (*Id.* ¶¶ 32–33.) The Hammond Police Department also had an internal policy prohibiting ride-alongs with minors. (*Id.* ¶ 13.) Z.H. does not allege that Chief Doughty participated in the ride-along himself.

Officer Garcia moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and for judgment on the pleadings under Rule 12(c). (DE 17.) He argues that Z.H. has not pled facts rising to a constitutional violation and that, even if so, he is entitled to qualified immunity. (*Id.* at

1.) Chief Doughty also moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] (DE 9.)

### B. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Next, Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The Defendants have not yet filed their answers to the complaint, electing instead to file motions to dismiss. Accordingly, in light of the express

---

[2] Chief Doughty also argues that the case should be dismissed under Rule 12(b)(1) for lack of jurisdiction. He directs this argument to "any state law claims," but there simply aren't any such claims, and Z.H. doesn't argue otherwise.

terms of Rule 12(c), Officer Garcia's motion for judgment on the pleadings is premature.³ *See e.g.*, *Mabry v. City of E. Chicago*, No. 2:16-CV-402-JVB-JEM, 2020 WL 638897, at *2 (N.D. Ind. Feb. 11, 2020) ("Because the ECHA Defendants filed an answer to the complaint before filing the instant motion, the instant motion is a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).") However, the practical effect of his motion being filed too early is inconsequential. While there are several differences between deciding a motion under Rule 12(c) versus deciding it under Rule 12(b)(6),⁴ Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017).

C. Discussion

(1) *Claims against Officer Garcia*

Z.H.'s claims against Officer Garcia in his individual capacity for violations of the Fourteenth Amendment are brought pursuant to 42 U.S.C. § 1983. As a preliminary matter, Officer Garcia submits that he was not acting under color of law when taking Z.H. on the ride-along, so he cannot be sued for constitutional violations. *Cf.* § 1983 (providing that, for the liability to attach, the wrongful action must be carried out "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"). To determine if an officer's actions are under color of law, the Court considers whether, as alleged, they are related in some way to the performance of his police duties. *See United States v.*

---

³ According to Federal Rule of Procedure 7(a), pleadings are: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."
⁴ Under Rule 12(c), either party may move for judgment on the pleadings and both the complaint and the answer, as well as exhibits, may be considered for purposes of judgment on the pleadings. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998).

5

*Christian*, 342 F.3d 744, 751 (7th Cir. 2003) ("Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties."). Here, the complaint alleges sufficient facts to infer that Officer Garcia was acting under color of law when he touched Z.H. without her consent and harassed her. In particular, the complaint suggests that Officer Garcia was providing the ride-along for the purpose of giving Z.H. an insight into policing; he was on duty at the time of the ride along; and he was using a Hamond police car with some incidents occurring inside that car. Although in his briefs Officer Garcia would like to portray the ride-along as a sequence of events unrelated to his official duties, such characterization is not supported by the allegations in the complaint. The complaint suggests that the Hammond Police Department offered ride-alongs as part of its services to the community. The complaint also indicates that Z.H. was required to participate in a ride-along with a police officer. Construing all reasonable inferences in Z.H.'s favor, one can assume that Z.H. was not a mere civilian volunteer, but someone required to participate in a ride-along, and Officer Garcia was not a random officer assigned to bring her along, who then transgressed from his duties, but someone who assumed the duty as a Hammond police officer to provide an educational experience to Z.H. and then used his position to take advantage of her. Accordingly, the Court finds that the complaint sufficiently alleges that Officer Garcia acted under color of law.

Next, Officer Garcia argues that Z.H.'s complaint should be dismissed because he is entitled to qualified immunity. Pursuant to a qualified immunity defense, Officer Garcia is entitled to dismissal unless "(1) the plaintiffs adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly

established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). "It is at this point the Rule 12(b)(6) defense and the qualified immunity defense become intertwined. Under Rule 12(b)(6), [defendant] can defeat [plaintiff's] cause of action if their complaint fails 'to state a claim upon which relief can be granted.' Fed. R. Civ. P. 12(b)(6). As the Supreme Court noted, '[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.'" *C.C. ex rel. Andrews v. Monroe Cty. Bd. of Educ.*, 427 F. App'x 781, 782–83 (11th Cir. 2011) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)) (other citation omitted). Therefore, the Court will examine the complaint to determine if it states a violation of the Fourteenth Amendment. If it does, the Court will move to the second step and will determine if the Constitutional right was clearly established at the time of the alleged violation.

      (a)  *Substantive Due Process*

A violation of substantive due process occurs when the alleged conduct "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). "The Supreme Court has noted that this standard lacks precise measurement, but has stated that the emphasis on whether conduct shocks the conscience points toward the tort law's spectrum of liability. Only conduct falling toward the more culpable end of the spectrum shall be found to shock the conscience." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007) (citations and quotation marks omitted). It is clearly established that the liberty protected by the Fourteenth Amendment substantive due process right "includes bodily integrity" and is infringed

by a serious, as distinct from a nominal or trivial, battery. *Alexander*, 329 F.3d at 916. Very serious batteries, such as rape and egregious sexual conduct, have been held as conscience-shocking deprivations of liberty in violation of substantive due process. *Id.* (citing *Wudtke v. Davel*, 128 F.3d 1057, 1060, 1063 (7th Cir. 1997) (holding that school district superintendent's escalating physical assault over several weeks, including coerced oral sex, was "serious physical assault" that stated a claim for a violation of substantive due process)).

As reprehensible as Officer Garcia's conduct toward Z.H. was, as alleged, it did not rise to the level necessary to violate her right to substantive due process. Z.H. likens her case to *Kane v. Barger*, a Third Circuit case, where a police officer violated the bodily integrity of a sexual assault victim when he took her to a secluded room at a police precinct alone and photographed her naked private areas on his personal cell phone, without evidentiary purpose. 902 F.3d 185, 188 (3d Cir. 2018). There, the court characterized the right at issue as "an individual's right not to be sexually fondled and illicitly photographed by a police officer investigating his or her case, for the officer's own gratification." *Id.* at 195. Finding that the defendant "acted for personal gratification rather than investigative ends," the Court held that his "conduct shocks the conscience and violated [plaintiff's] right to bodily integrity." *Id*. at 188. In fact, the right at issue was so "obvious" that it could be deemed clearly established without existing similar cases. *Id.*

Z.H. also relies on *Haberthur v. City of Raymore*, an Eighth Circuit case where a police officer followed the plaintiff home, drove by her house on various occasions, twice threatened to give her a ticket, repeatedly showed up in uniform at her place of employment, and on one occasion fondled her chest while making sexually suggestive comments. 119 F.3d 720, 723 (8th Cir. 1997). That court found that "sexual fondling and touching or other egregious sexual

contact" can violate substantive due process, and that the repeated nature of the officer's harassment and threats of adverse official action violated her personal integrity. *Id.* at 724.

But the alleged conduct of Officer Garcia is not as severe as the conduct of the defendants in *Kane* and *Haberthur* so as to shock the conscience. Z.H. does not allege that Officer Garcia's conduct took place over multiple encounters or that he threatened adverse official action as the officer did in *Haberthur*. Additionally, unlike the officer in *Kane*, Officer Garcia did not remove clothing from Z.H. and did not insist on her exposing herself so he could take pictures on his cell phone for mere self-gratification. Instead, during the same ride-along, Officer Garcia allegedly touched Z.H.'s breast once as he adjusted her seatbelt, then at various times placed his hand on her leg while driving around, and finally put his hand on her buttock while standing in line at a gas station. And, while—no doubt—Z.H. would have felt upset and even scared at his suggestive comments to the prostitute that she, too, wanted to be a prostitute and his repeated inquiry of another officer at a secluded location if he wanted to have sex with Z.H., these allegations fall short of shocking the conscience. *See Twyman v. Burton*, 757 F. Supp. 2d 804, 810 (S.D. Ind. 2010) (no substantive due process violation where duration of the defendant's harassment was not protracted, the defendant did not use force, and to the extent he committed an indirect battery by sex toy, the battery was not sufficiently severe); *Nagle v. McKernan*, 2007 WL 2903179 (N.D. Ill. 2007) (no substantive due process violation where fire marshal wrote love note and intimately pressed his face against plaintiff and breathed on her neck).

Moreover, a court in this district found that an officer who engaged in similar or even more egregious conduct than Officer Garcia did not violate a ride-along passenger's substantive due process rights. In *Decker v. Tinnel*, No. 2:04-CV-227, 2005 WL 3501705 (N.D. Ind. Dec.

9

20, 2005), the court held that an officer, who asked his eighteen year-old female ride-along passenger to strip, drove her to several locations and attempted twice to forcibly kiss her to which she responded by yelling "no," grabbed her chest over her shirt, forced his hand between her closed thighs, coming within an inch of her vagina, and briefly held his hand over her breasts, did not violate her right of bodily integrity. *Id.* at *1–2, *7–8.

In finding no violation of substantive due process, the court took into account the fact that the offensive behavior took place within a relatively short period of time, during one ride along. The touching lasted only for a matter of seconds and ended when the victim said no. Other than the touching was unwanted there was no evidence of force and no threats of force or display of firearms. And, although improper and depraved, the touching at issue did not rise to the level of egregious physical assaults present in cases that involved forcible rapes or other serious sexual molestations. *Id.* at *9. In concluding, the court observed that "[m]any harms, though caused by a state actor, do not fall within the scope of section 1983, for section 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws." *Id.* (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1009 (8th Cir. 1992). As recounted above, Officer Garcia's conduct was less severe than Officer Decker's. Likewise, like in *Decker*, Officer Garcia did not use a gun or other threat to coerce Z.H. into complying. Therefore, even if Z.H. allegations were to be proved true, they would not state a violation for substantive due process.

Z.H. argues that Officer Garcia's conduct was made worse— to the point of shocking the conscience—by the fact that she was seventeen at the time of the ride-along. Yet, her age alone does not present a sufficient basis to convert her grievance into an actionable complaint for a constitutional violation. Although she had not yet reached the age of majority, she was already a

college student, and, while various laws understandably accord special considerations to young people until the day they turn eighteen, cases show that Z.H.'s age alone does not give rise to a constitutional claim. Rather, the totality of circumstances must be considered. For example, the Sixth Circuit in *Lillard v. Shelby County Board of Education* noted that a teacher's rubbing of a high school student's stomach, along with a suggestive remark, was "wholly inappropriate, and, if proved, should have serious disciplinary consequences . . . . But without more, it is not conduct that creates a constitutional claim." 76 F.3d 716, 726 (6th Cir. 1996). In *Chama Valley*, the Tenth Circuit held that gender-specific harassment of a twelve-year-old female student, where her teacher called her a prostitute and permitted her classmates to taunt her, "gives it no greater claim as a constitutional violation than verbal harassment generally." *Abeyta by & through Martinez v. Chama Valley Indep. Sch. Dist.*, *No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996). In *Morris v. Dearborn*, the Fifth Circuit held that the right to bodily integrity was not violated for a pre-school age child that typed sexually explicit messages guided by the instructor while sitting on the instructor's lap. 181 F.3d 657, 666 (5th Cir. 1999). There, the court distinguished another Fifth Circuit case, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th 1994), where a child was sexually molested by a teacher and held that *Doe* was "so far removed factually" from the facts at issue that it did not inform the decision. *Id.* None of these cases lower the bar of egregious, conscience-shocking behavior required to make a claim so obviously a violation of substantive due process based on the plaintiff's status as a minor. Therefore, Z.H.'s status as a seventeen-year-old is not a basis for distinguishing this case from *Decker*, where the defendant's similar—or even worse—conduct during a ride-along did not violate the substantive due process rights. Because Z.H. has failed to plead facts that, if true, could show that Officer Garcia's conduct

11

shocked the conscience as that term is understood in the context of the Fourteenth Amendment jurisprudence, the Court must dismiss her substantive due process claim.

### (b) *Equal Protection Clause*

Next, Z.H. alleges that Officer Garcia violated the Equal Protection Clause and treated her differently because she is female. To state a claim under the Equal Protection Clause, Z.H. must show that "a state actor purposefully discriminated" against her because of her "identification with a particular (presumably disadvantaged) group." *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994). Z.H. must allege that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012). "To be considered similarly situated, a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects. The similarly situated analysis is not a precise formula, but we have stated repeatedly that what is clear is that similarly situated individuals must be very similar indeed." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

Z.H. alleges that she was subject to Officer Garcia's conduct because she is female. She insists that she has stated a claim for equal protection because it is "plausible that a reasonable person would conclude that Garcia's male ride-alongs were not groped, pursued for sexual intercourse, and subject to an attempt to be pimped out for sexual intercourse." (DE 21 at 11.) Yet her complaint does not allege that male ride-along passengers were treated differently[5] or that Officer Garcia acted intentionally to discriminate against her. In fact, the only other person

---

[5] In fact, the complaint does not allege that Officer Garcia gave ride-alongs to any males.

mentioned in the complaint as a ride-along passenger with Officer Garcia is her female classmate. Like with her substantive due process claim, here too, Z.H. must adequately allege the facts that, if true, would constitute a violation of her rights under the equal protection clause of the Fourteenth Amendment. However, aside from a conclusory statement in paragraph 35 of the complaint that "the actions of Defendant Garcia were done with the intent of depriving the Plaintiff of her liberty, etc., and also in violation of equal protection of the law," the complaint is devoid of any allegation that Officer Garcia intentionally treated her "differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky*, 675 F.3d at 747. Such conclusory allegations do not entitle Z.H. to relief. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) ("In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."). In addition, Z.H.'s two-sentence argument on the subject in her response brief (DE 21 at 11), without any reference to precedent or legal analysis, is as good as conceding that the complaint fails to state an equal protection claim. *See Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). To conclude, the Court finds that Z.H. has failed to state an equal protection claim against Officer Garcia.[6]

### (2) *Claims against Chief Doughty*

---

[6] Because Z.H. has failed to state any claims against Officer Garcia for which relief can be granted, she has also failed to show that Officer Garcia violated a constitutional right, so that the Court does not need to consider the second step of Officer Garcia's qualified immunity defense, that is, whether the rights were clearly established at the time of the ride-along.

Z.H. sued Chief Doughty in his individual capacity under a theory that he failed to train or supervise Officer Garcia, who allegedly violated her Constitutional rights. Setting aside the fact that there's no *respondeat superior* liability under § 1983, *see Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions," not the conduct or knowledge of the persons they supervise), Z.H.'s claims against Chief Doughty fail because, as explained above, she has not stated a claim for which relief can be granted against Officer Garcia. *See Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 596–97 (7th Cir. 1997) ("Having decided that the officers did not violate the Constitution, we must conclude that neither the City nor Police Chief Arreola can be held liable for Mr. Phillips' death."). Without a viable claim against Officer Garcia, it's impossible for Z.H. to prevail against Chief Doughty because the complaint doesn't suggest that Chief Doughty had any personal involvement with Z.H. *See Kelly v. Mun. Cts. of Marion Cnty.*, 97 F.3d 902, 909 (7th Cir. 1996) (a § 1983 suit requires personal involvement in the alleged constitutional deprivation to support a viable claim and the defendant must cause the deprivation at issue). Therefore, the Court finds that Z.H. has failed to state a claim against Chief Doughty, and the Court must dismiss all claims against Chief Doughty.

### D. Conclusion

For the foregoing reasons, the Court—

- DENIES Officer Garcia's motion for judgment on the pleadings as filed prematurely but GRANTS his motion to dismiss (DE 17) and dismisses Z.H.'s claims against him with prejudice; and

- GRANTS Chief Doughty's motion to dismiss (DE 9) and dismisses Z.H.'s claims against him with prejudice.

SO ORDERED.

ENTERED: March 21, 2022

                                               /s/ JON E. DEGUILIO
                                          Chief Judge
                                          United States District Court