## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

ZAILEY HESS,

    Plaintiff,

v.

JAMIE GARCIA,

    Defendant.

CASE NO. 3:21-CV-101-JD-MGG

## OPINION AND ORDER

Before the Court is a motion filed on February 21, 2024, by Plaintiff Zailey Hess[1] seeking a protective order pursuant to Federal Rule of Civil Procedure 26(c) concerning twelve Authorization/Releases (Forms) served on her by Defendant's counsel on February 12, 2024. [DE 46]. Defendant filed a response on March 5, 2024 [DE 48], to which Plaintiff filed a reply on March 6, 2024 [DE 50]. The matter is thus ripe for ruling. For the following reasons, the Court GRANTS Plaintiff's motion without prejudice to Defendant obtaining some more limited subset of the discovery sought by the release forms by more narrowly tailored discovery requests seeking demonstrably relevant and unprivileged information.

---

[1] Although Plaintiff used only her initials when she filed the complaint, a question was raised during her appeal to the Seventh Circuit about the need to litigate under a pseudonym since she was no longer a minor. *See* [DE 1 ¶ 4]. Hess's counsel responded by agreeing to use Hess's real name in the caption and other documents, *Hess v. Garcia*, 72 F.4th 753, 757 n.1 (7th Cir. 2023), which he has since done. Accordingly, the Clerk will be instructed to amend the case caption as shown in Plaintiff's post-appeal filings and in this opinion and order.

## Factual and Procedural Background

### A.    Factual Allegations

Hess initiated this case on February 11, 2021, alleging that Defendant Jamie Garcia, a patrol officer with the Hammond Police Department, violated her constitutional rights during a "ride-along" on February 15, 2019, which Hess went on as part of a class assignment in her senior year of high school. Hess alleges that Garcia's conduct during the ride-along violated her Fourth Amendment right to be free from unreasonable seizures, as well as her Fourteenth Amendment right to equal protection under the law and her Fourteenth Amendment substantive due process right to be free from unreasonable intrusions on her bodily integrity.[2]

The Court recognizes that there are disputes about what happened during the ride-along. The district court summarized Plaintiff's allegations about Garcia's conduct as including "unwanted touching, insinuating comments, and otherwise degrading behavior." [DE 23 at 1]. In addition to that general description, this Court will set forth the Seventh Circuit's summary of Plaintiff's allegations in its decision reversing the district court's dismissal of the complaint:[3]

> …. Officer Garcia picked Hess up in his private vehicle and drove her to the police station before his shift began. Garcia introduced Hess to other officers around the

---

[2] Hess also sued the Hammond Chief of Police under a supervisory theory of § 1983 liability. That claim was dismissed by the district court and the dismissal was upheld on appeal. *See* [DE 23 at 13-14]; *Hess*, 72 F.4th at 767-68.

[3] These are not findings of fact but only "the factual allegations in the complaint," which the Seventh Circuit "accept[ed] … as true and draw[ing] reasonable inferences in plaintiff's favor because [the court] was reviewing de novo a dismissal on the pleadings for failure to state a claim." *Hess*, 72 F.4th at 756-57.

station before leading her to the parking lot. Hess got into
the patrol vehicle and put on her seatbelt.

The complaint describes a day-long sequence of
inappropriate comments and questions punctuated by
unwelcome physical sexual contacts. When Hess got into the
patrol car, Officer Garcia immediately began touching her,
reaching over and rubbing his arm against her breast while
adjusting the seatbelt she had already secured. Throughout
the ride along, Officer Garcia repeatedly reached across the
center console to place his hand on Hess's thigh. Even
outside the vehicle, Garcia's sexual groping continued.
Garcia drove Hess to a gas station in what Hess described as
a bad area of town where the cashier worked behind
bulletproof glass. Hess and Garcia went inside the store.
Hess got in line behind Garcia, who told her to move to
stand in front of him. When Hess did so, Officer Garcia
placed his hand on her buttocks.

Throughout the ride along, Garcia also asked Hess
about her dating and sex life. While on patrol, Garcia told
Hess he was going to find a prostitute for her. Garcia
stopped a woman he assumed was a prostitute, introduced
Hess, and told the woman that Hess wanted to become a
prostitute herself.

Late in the evening, Garcia and other officers made an
arrest. After leaving the scene, Garcia drove Hess to a
secluded area where they met another Hammond police
officer. In this secluded area, Garcia spoke to the other
officer through open car windows and repeatedly asked the
other officer if he wanted to have sex with Hess, who stayed
in the car, terrified.

*Hess*, 72 F.4th at 757.

### B.  Prior Rulings on Legal Sufficiency of Complaint

In its opinion dismissing the complaint, the district court first said that if the

complaint's allegations are true, "Officer Garcia's conduct toward [Hess] was

reprehensible and worthy of discipline." [DE 23 at 2]. But the district court held that

3

Hess's constitutional claim "has a limited scope … which does not encompass [her] grievance." [*Id.*; *see also id.* at 7-12 (citing district court precedent holding that a plaintiff's substantive due process rights are not violated when the conduct at issue is not sufficiently egregious to meet the constitutional standard of "shocks the conscience"); *id.* at 12 (finding no plausible equal protection claim because the complaint failed to allege that male ride-along passengers were treated differently, or that Officer Garcia acted intentionally to discriminate against Hess)].

Plaintiff appealed the district court's decision, and the Seventh Circuit reversed. The Seventh Circuit examined the complaint's allegations and found that they plausibly allege sexual harassment, sexual assault, and an unreasonable seizure. The court noted that it is "common ground across the circuits" that "sexual assault by an official acting under color of law violates the constitutional rights of the victim." *Hess*, 72 F.4th at 758. The court reaffirmed that precedent and held that a public official's unreasonable seizure violates the Fourth Amendment, while a public official who commits sexual harassment or sexual assault while acting under color of law violates the Fourteenth Amendment equal protection and substantive due process clauses. In so holding, the court rejected the argument adopted by the district court that some sexual assaults by a public official acting under color of law might not be sufficiently egregious to rise to the level of a constitutional violation. The court explained that "line drawing would be impossible," and that, in any event, any "sexual assault by a public official acting under color of law," regardless of whether it "stop[s] short of rape or use of force at the level

federal judges might consider extreme[,]. … shocks the conscience because it is intentional and serves no governmental purpose." *Id.* at 767.

### C.    The Present Discovery Dispute

After the case was remanded for further proceedings [DE 29], the Court entered a Scheduling Order [DE 41], and the parties began discovery. In terms of the present discovery dispute, Plaintiff states that Defendant served her with twelve release forms for her signature. The release forms, if signed, would authorize Defendant to obtain Plaintiff's medical, employment, and educational records directly from the persons or entities named in the forms. Plaintiff represents in her motion [DE 46 at 1-2] that the forms are directed to the following institutions and entities: (1) Plymouth High School; (2) Ancilla College; (3) Indiana State University; (4) Black Cat Clothing Company; (5) Miller's Merry Manor; (6) Christos Family Dining; (7) Walgreens; (8) Walmart; (9) CVS; (10) Better Health; (11) St. Joseph Regional; and (12) Indiana State University Health Clinic.

Plaintiff argues in her motion that "[t]he Releases serve no other purpose than to further [Defendant's] intent to psychologically traumatize, annoy, embarrass, and harass the Plaintiff." [DE 47 at 3]. She asserts that Defendant's supposedly improper purpose is self-evident from Defendant's requests for her "primary/secondary school records" and from his demand that she "allow every employer she has ever had, to provide information about her to [Defendant]," asking rhetorically, "how [can] such request[s] [ ]not be harassment?" [DE 47 at 3-4]. Plaintiff argues that her educational and employment records "do not enable proving or disproving what Defendant Garcia

did to her." [DE 47 at 3-4]. As for her medical records, Plaintiff argues that she has not alleged she suffered a physical injury or a mental injury above "garden variety" mental stress, and that she intends to seek to amend her complaint to make the "garden variety" nature of her damages allegations clearer.

Defendant responds by objecting to Plaintiff's "ad homonym attacks against Defendant's Counsel, attributing ill motives to Counsel," and he further states that "[t]he defense simply seeks to adequately prepare to defend this lawsuit." [DE 48 at 2]. Defendant then offers some specific reasons why the Court should allow his discovery of the records in question, much of which stem from Plaintiff's testimony when she was deposed by Defendant's counsel.

### Legal Standard

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)). Information that is within the scope of discovery does not need to be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Proportionality is determined by considering "the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

6

likely benefit." Fed. R. Civ. P. 26(b)(1). Determining "[p]roportionality, like other concepts, requires a common sense and experiential assessment." *Todd v. Ocwen Loan Servicing, Inc.*, No. 2:19-CV-00085-JMS-DLP, 2020 WL 1328640, at *3 (S.D. Ind. Jan. 30, 2020).

Rule 26(c) provides that "a party or any person from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of showing that good cause exists by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Ball Corp. v. Air Tech of Mich., Inc.,* 329 F.R.D. 599, 603 (N.D. Ind. 2019) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, (1991)). A court may issue a protective order, on motion or its own initiative, if the discovery in question "is outside the scope permitted by Rule 26(b)(1)." *Trupp v. Roche Diagnostics Corp.*, No. 1:18-CV-02587-SEB-DLP, 2019 WL 2250584 (S.D. Ind. May 24, 2019). The court may also issue a protective order if it finds that doing so is necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). If the court decides a protective order is warranted, it can issue an order adopting one or more options for limiting the discovery, including:

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

*Id.*

District courts have broad discretion to manage the discovery process, including through the entry of protective orders. *See Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017). As the Supreme Court explained, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. …The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

<u>Discussion</u>

A.    **Procedural Concerns**

Plaintiff's motion fails to comply with Local Rule 26-2(b), which states that "[a] party who files a motion for relief under Fed. R. Civ. P. 26(c) or 37 must file with the motion those parts of the discovery requests or responses that the motion pertains to." N.D. Ind. L.R. 26-2(b). As far as the Court can tell, Plaintiff did not attach the twelve release forms to her motion, and they are not otherwise in the record.

8

As stated herein, as well as in the opinion and orders on two other pending motions which the Court will issue on or about the same day as this opinion and order, both Plaintiff and Defendant (more likely their counsel), have shown a pattern of irresponsibility and sloppiness in their approach to the procedural requirements applicable in this Court. For instance, given that Plaintiff did not include the releases with her motion, Defendant should have submitted them with his response brief. *See* N.D. Ind. L.R. 26-2(a)(2)(B)(ii) ("Discovery material *must* … be filed when … the material is used in a proceeding" (emphasis added)). In addition, Defendant's response brief goes into some detail describing Plaintiff's deposition testimony. But the Court is unable to evaluate Plaintiff's deposition testimony for itself because Defendant failed to submit a copy of the deposition transcript with his response brief, which also was required by Local Rule 26-2(a)(2)(B)(ii).[4] Subsequent filings by Plaintiff also quoted from the deposition transcript without attaching it, continuing the pattern on both sides of failing to comply with Local Rule 26-2(a)(2)(B)(ii).

Although Defendant eventually filed a motion in which he requested leave of court to file Plaintiff's deposition transcript [DE 51], he does not explain the legal basis for that request.[5] In fact there is none, because the Local Rules required Defendant to

---

[4] Defendant stated in his response brief that he would file the deposition transcript "upon request," citing subsection (B)(i), instead of (B)(ii), of Local Rule 26-2(a)(2). [DE 48 at 3 n.2]. Subsection (B)(i) requires that discovery materials be filed if ordered by the court but does not in any way limit the requirement in subsection (B)(ii) of filing discovery materials "used in a proceeding."

[5] Defendant's motion [DE 51], titled "Defendant's Motion For Leave To File Plaintiff's Deposition Transcript And For Sanctions," also violates Local Rule 7-1(a), which requires that motions "be filed separately," although "alternative motions may be filed in a single paper if each is named in the title following the caption." N.D. Ind. L.R. 7-1(a). Defendant's request for sanctions is in addition to, not in the alternative to, Defendant's request for leave to file Plaintiff's deposition transcript. If Defendant had complied with Local Rule 7-1(a) by filing a separate motion seeking leave to file the deposition transcript,

have filed the deposition transcript without the need for a court order granting leave to do so. In addition, the Local Rules clearly state that "[m]otions to publish deposition transcripts are not required." N.D. Ind. L.R. 26-2(3). Perhaps Defendant was reluctant to file the deposition transcript without first obtaining court permission because of the personal nature of some of the questioning at the deposition. There does not appear to be any such concern here, however, because neither party has sought the entry of a confidentiality order, which would protect the deposition transcript from being disclosed publicly.[6] Moreover, any concern about the personal or sensitive nature of the deposition transcript is not properly addressed by withholding the supporting material from the Court.[7]

This Court has spent an inordinate amount of time reading the parties' arguments across multiple filings, all of which discuss and rely on Plaintiff's deposition testimony, among other discovery, without being able to verify what either party states in those filings because the discovery in question is not currently in the record. Waiting for a court order to file the deposition transcript–or any other discovery materials, such as the releases–only leads to unnecessary delay, as it has done here. And it makes it

---

rather than combining that request with his sanctions motion, the non-issue of leave to file the deposition might have been discovered and corrected earlier. Defendant's failure to comply with Local Rule 7-1(a) is not necessarily a reason by itself for his sanctions motion to be denied. But the parties are forewarned that, going forward, the Court may strike without prejudice to refiling any such improperly combined motions.

[6] *See* N.D. Ind. Model Stipulated Protective (Confidentiality) Order (available on the district website).

[7] The proper course in that situation would have been to file the transcript under seal in accordance with Local Rule 5-1(c)(1), and then seek a court order under Local Rule 5-1(a) to allow the document to remain under seal. *See Mercasia USA Ltd. v. 3BTech, Inc.*, No. 3:17-CV-718 JD, 2022 WL 872735, at *3 (N.D. Ind. Mar. 24, 2022) ("A party seeking to seal documents has the burden of specifically demonstrating to a court why an order to seal is appropriate.").

very difficult for the Court to rule on the pending motions without causing even further delay by having to instruct the parties to file discovery that should have already been filed with the pending motions. Nevertheless, despite the parties' procedural missteps, the Court has determined that the best path forward is to issue a ruling on the motions as filed (that is, without the supporting discovery materials). The Court advises counsel for both sides, however, that future errors will not be so easily forgiven and excused. Any further neglect of the Federal Rules of Civil Procedure or the Local Rules for the Northern District of Indiana by either party will be unduly prejudicial to the Court's obligation to timely resolve disputes pursuant to Rule 1, and, as a result, may warrant the striking of the noncomplying document and/or the imposition of sanctions. *See Est. of Logan v. City of S. Bend*, No. 3:19-CV-495-DRL-MGG, 2021 WL 389412, at *3 (N.D. Ind. Feb. 3, 2021).

### B.    Analysis

The parties' arguments on whether the Court should issue a protective order touch upon issues of privilege, relevance, proportionality, and whether the releases are annoying, embarrassing, or oppressive. The Court will first address the issue of privilege as it relates to Plaintiff's therapy records. The Court will then turn to Plaintiff's educational, employment, and medication records, and the issues of relevance, proportionality, and Rule 26(c)'s "annoyance, embarrassment, oppression" language.

### 1.    Plaintiff's Therapy Records

Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense …." Fed. R. Civ. P.

26(b)(1) (emphasis added)). Plaintiff asserts that her mental health records are privileged, but she does not identify the records to which she is referring. The Court assumes, based on Defendant's arguments, that Plaintiff is referring to the releases addressed to Better Health and Indiana State University Health Clinic.[8]

In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the Supreme Court affirmatively recognized the existence of a psychotherapist-patient privilege, holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 15.[9] The purpose of the privilege, as explained by the Supreme Court, is to promote the public interest in the honest exchange of communication between a psychotherapist and their patient by establishing that information about the patient's mental health will not be disclosed to third parties. *Id.* at 10-12.[10] Likewise, the privilege exists to avoid deterring people from

---

[8] Defendant states that he seeks Plaintiff's records from Indiana State University Health Clinic because Plaintiff testified at her deposition that she began treatment there approximately 5-6 months after the incident and that "a large chunk of her visits" were about the stress she suffered from this incident. [DE 48 at 10]. He states that he seeks Plaintiff's records from Better Health because Plaintiff testified that she was treated there for approximately three months beginning after she filed this lawsuit, although she also testified she did not think she "got to talking about Defendant" in those therapy sessions. [*Id.*]. The Court notes that Defendant also seeks Plaintiff's medication records, identifying the releases addressed to CVS, Walgreens, St. Joseph Regional, and possibly Walmart (according to Defendant, the Walmart release is for prescription medications [DE 48 at 9]; Plaintiff states that Walmart is an employer [DE 56-1 at 7]) as having been issued for that purpose. The medication records, however, do not fall under the psychotherapist-patient privilege, which covers only confidential communications between a therapist and patient. Therefore, those release forms will be addressed in the section that follows dealing with relevance, proportionality, and "annoyance, embarrassment, [or] oppression."

[9] Plaintiff's § 1983 claim arises under federal law, and therefore federal common law applies. *See, e.g., Zukley v. Town of Schererville*, No. 2:14-cv-347-JVB-JEM, 2016 WL 6994158, at *3 (N.D. Ind. Nov. 30, 2016).

[10] *See Jaffe*, 518 U.S. at 10 ("Effective psychotherapy … depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment

obtaining needed mental health treatment out of fear that by doing so they will put themselves at a disadvantage in litigation. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (Posner, J.).

*Jaffe* acknowledges that, "[l]ike other testimonial privileges, the patient may … waive the protection." 518 U.S. at 15 n. 14. But the Court did not go further to explain the way the privilege would be waived, stating that it was "neither necessary nor feasible to delineate [the] full contours [of the privilege]," and that details of the privilege should be worked out "on a case-by-case basis." *Id.* at 18. The Court did clarify that it was rejecting "the balancing component" of the privilege by which the lower court opinion in that case (*Jaffee v. Redmond*, 51 F.3d 1346 (7th Cir. 1995) (Coffey, C.J.)) had weighed "the evidentiary need for the disclosure" against the "patient's privacy interests." *Id.* at 7, 15. As the Court explained, "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege," analogizing to the attorney-client privilege, for which the Court has said that "if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little

---

or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.").

better than no privilege at all.'" *Id.* at 18 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).

Following *Jaffee*, courts struggled with fashioning a coherent, predictable rule for determining when waiver principles should apply to an assertion of the psychotherapist-patient privilege. "[C]ourts have been unanimous in holding that a party may surrender the psychotherapist-patient privilege by affirmatively placing his or her psychological state at issue in the suit," but have encountered difficulties "in determining when that occurs." *Flowers v. Owens*, 274 F.R.D. 218, 223 (N.D. Ill. 2011). The question posed by this case is whether a person places his or her psychological state at issue "whenever emotional distress damages of any kind are sought." *Id.* at 223-24. The Courts taking what is known as the "broad approach" to waiver – which are likely still "[a] numerical minority," *id.* at 224 (although possibly increasing in number at least in this circuit, as will soon be discussed) – have answered yes to that question. At the opposite end of the spectrum is the narrow approach, not uncommon outside this circuit,[11] pursuant to which "a plaintiff waives the privilege only when she affirmatively relies on her communications with the psychotherapist or calls the therapist as a witness." *Taylor v. City of Chicago*, No. 14 C 737, 2016 WL 5404603, at *2 (N.D. Ill. Sept. 28, 2016). "Courts adhering to this narrow view generally deem the privacy interests inherent in the privilege to be of paramount importance. By

---

[11] *See, e.g.*, *Swan v. Miss Beau Monde, Inc.*, 566 F. Supp. 3d 1048, 1060 (D. Ore. 2021) (finding the rationale underlying the narrower approach to waiver more persuasive); *Kennedy v. Municipality of Anchorage*, 305 P.3d 1284, 1287-91 (Alaska 2013) (same).

precluding plaintiffs from relying on the privileged communications to further their own claim, this approach prevents the privilege from being used as both a shield and a sword." *Kennedy,* 305 P.3d at 1289 (internal quotation marks and citation omitted).

By far the most common approach, both within and outside this circuit, is the "middle ground" approach" whereby the court will find that no waiver has occurred if the plaintiff seeks only "garden variety" emotional distress damages.[12] In this circuit, one of the earliest cases to articulate the "garden variety" theory of non-waiver is *Santelli v. Electro-Motive,* 188 F.R.D. 306 (N.D. Ill. 1999) (Kennelly, D.J.). In that case, the plaintiff voluntarily limited her emotional distress claim to "the negative emotions that she experienced essentially as the intrinsic result of the defendant's alleged conduct," and, in addition, the magistrate judge "barred [the plaintiff] from introducing evidence of any resulting symptoms or conditions that she might have suffered." *Id.* at 309. The court found that the combination of the plaintiff's self-imposed limitation and the magistrate judge's further restrictions meant that the "plaintiff's claim ha[d] been

---

[12] *See, e.g., Caine v. Burge,* No. 11 C 8996, 2012 WL 6720597, at *3 (N.D. Ill. Dec. 27, 2012) ("[C]ourts in this District, as well as others throughout the country which apply the 'middle ground' approach, have held that where the plaintiff seeks 'garden variety' emotional damages—which is to say, damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct—the privilege remains intact and is not waived."); *EEOC v. DHL Express,* No. 10 C 6139, 2011 WL 6825497, at *6 (N.D. Ill. Dec. 27, 2011) ("The overwhelming weight of authority in this District holds that an individual's medical records are not discoverable unless that individual has placed her psychological state in issue by claiming more than mere "garden variety" psychological injuries."); *Ricks v. Abbott Labs.,* 198 F.R.D. 647, 649 (D. Md. 2001) ("[This] standard reflects a recognition that there is a difference between more serious emotional distress that might be diagnosed and treated as a disorder by a psychiatrist and the less serious grief, anxiety, anger, and frustration that everyone experiences when bad things happen."); *Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs.,* 194 F.R.D. 445, 450 (N.D.N.Y. 2000) ("merely seek[ing] damages for emotional distress incidental to the alleged misconduct of defendants" does not result in a waiver); *Jackson v. Chubb Corp.,* 193 F.R.D. 216, 225 n.8 (D.N.J. 2000) ("Simply put, where a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient privilege.").

15

narrowed to such an extent that she ha[d] successfully avoided waiver of her psychotherapist-patient privilege." *Id.* (citing *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636–38 (7th Cir. 1974) (holding that compensatory damages may be awarded for humiliation, either inferred from circumstances or established by testimony, and that medical evidence of mental or emotional impairment is not necessary to sustain such an award)).

The parties make no effort to distinguish between the three approaches to waiver or to put forth a specific argument for why the Court should adopt one over the other. Instead, both sides merely cite the cases that support the outcome they seek here — the middle "garden variety" approach for Plaintiff, and the broad approach to waiver for Defendant. Moreover, neither party addresses a preliminary matter for which there is substantial disagreement in this circuit — whether the Seventh Circuit's decision in *Doe v. Oberweis Dairy* resolved the waiver question by adopting the broad approach. *Oberweis* held that the district court in that case had erred by granting summary judgment to the defendant in a Title VII case brought by a 16-year old girl, who alleged that her supervisor sexually harassed her at work culminating in a single incident occurring outside of the workplace of what was referred to as consensual sexual intercourse (notwithstanding that the applicable state statutory rape law provided that a sixteen-year-old could not "consent" to sex with an adult). The opinion grapples with difficult issues arising out of the district judge's summary judgment ruling, at the end of which the court stated that "the district judge terminated the case prematurely[,] [b]ut he was correct to allow the defendant access to the plaintiff's psychiatric records"

16

because, "[a]lthough there is a psychotherapist-patient privilege in federal cases [citing *Jaffe*], ... the privilege is not absolute." 456 F.3d at 718. In the crucial sentence that immediately followed, the court stated: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Id.* The court closed its discussion by noting that "Rule 35 of the Federal Rules of Civil Procedure would entitle the defendant to demand that the plaintiff submit to a psychiatric examination," and that "there is no greater invasion of privacy by making existing records available to the defendant." *Id.* The court also stated "[t]he judge can seal the plaintiff's psychiatric records and limit their use in the trial ... to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records." *Id.*

Many district courts in this circuit have concluded that *Oberweis* does not resolve the issue of whether a party may avoid a waiver by alleging only "garden variety" emotional distress. *See, e.g., Caine,* 2012 WL 6720597, at *2 (noting that although "[s]ome courts have interpreted the Seventh Circuit's single post-*Jaffee* opinion on the subject as falling into the 'broad' category, [ ] the subject was addressed only briefly and did not hinge the privilege waiver on the presence of an emotional distress claim"); *Flowers,* 274 F.R.D. at 224 ("It is not clear whether this [i.e., the broad approach] is the Seventh Circuit's position.").[13] According to District Judge Lee of the Northern District of Illinois

---

[13] *See also Taylor v. City of Chicago,* No. 14 C 737, 2016 WL 11945123, at *3, 4 (N.D. Ill. May 2, 2016) (Finnegan, M.J.) (citing *Oberweis* for the universally accepted proposition that "an implied waiver occurs where a plaintiff places his mental condition at issue," but stating that "[t]he Seventh Circuit has not yet addressed th[e] question [of when exactly a plaintiff's allegations meet the 'at issue' threshold]"), *objections overruled,* 2016 WL 5404603.

(now Seventh Circuit Judge Lee), however, these courts have wrongly been "hesitant to apply the broad approach" because "*Oberweis* is binding precedent on this issue." *Taylor*, 2016 WL 5404603, at *3. As Judge Lee further explained, "[d]espite its terseness, … the rule espoused in *Oberweis* is straightforward and unequivocal: … *Oberweis* tells us precisely when [a party affirmatively places his or her psychological state at issue] …; 'by seeking damages for emotional distress.'" *Id.* (quoting *Oberweis*). Several courts agree with Judge Lee's analysis of the binding effect of *Oberweis*, most of which also go one step further, as Judge Lee did (*id.* at *7), of independently assessing the issue and finding the broad approach to waiver the better one, primarily because of definitional problems they see with the middle "garden variety" approach. *See, e.g., Laudicina v. City of Crystal Lake*, 328 F.R.D. 510 (N.D. Ill. 2018); *Glidwell v. So. Ill. Hosp. Servs.*, No. 22-1100-DWD, 2023 WL 2895147 (S.D. Ill. Apr. 11, 2023); *Prusaczyk v. Hamilton Cnt. Coal, LLC*, No. 3:20-CV-73-NJR, 2020 WL 6449327 (S.D. Ill. Nov. 3, 2020).

Because the parties have not explored the issue of whether *Oberweis* dictates the result here, the Court will proceed on the assumption that Defendant concedes otherwise.[14] That assumption is further buttressed by the fact that the only argument

---

[14] If Defendant wishes to make a contrary argument, he may do so. But the Court is somewhat skeptical that *Oberweis* can be read as holding that the privilege is waived merely by asserting emotional distress. The lack of any in-depth analysis of the issue is easily explained if the opinion is read narrowly as holding only that a waiver occurs *if* an emotional distress claim puts a person's psychological state in issue. *See, e.g., Koch v. Cox*, 489 F.3d 384, 389 (D.C. Cir. 2007) (observing that the Seventh Circuit's statement about waiver in *Oberweis* was made "without unnecessary elaboration"). But if the opinion is read broadly to mean all emotional distress claims put a person's psychological state in issue, the lack of any further discussion becomes problematic. "Obviously, if the privilege is automatically waived whenever a plaintiff seeks any type of damages for emotional distress, the privilege loses value." *Apollo v. Stasinopoulos*, No. 18 C 6475, 2020 WL 995094, at *2 (N.D. Ill. Mar. 2, 2020). That would seem to be contrary to the Supreme Court's intent in *Jaffe*. A broad waiver rule also seems contrary to the common-sense notion, supported by *Seaton*, 491 F.2d at 636–38, that emotions such as humiliation or

embarrassment are a human experience not requiring treatment by a medical professional. If the *Oberweis* court intended to hold that a waiver occurs anytime a plaintiff alleges emotional distress damages, at the very least it could have used less ambiguous syntax in the crucial sentence, like starting the sentence with "when" rather than "if." In fact, use of the word "if" could be read as a clear signal that the court did *not* intend to definitively resolve the question of when a person puts his or her psychological state in issue. As one court has noted (in reaching the opposite conclusion about *Oberweis*), "the judges on the Seventh Circuit are careful writers: They say what they mean and mean what they say." *Laudicina*, 328 F.R.D. at 514 (stating that "[t]he broad language [in *Oberweis*] hedges no bets," and that "the Seventh Circuit is all in" on the broad waiver rule).

The *Laudicina* court found additional support for its interpretation of *Oberweis* in the Seventh Circuit's reference to a Rule 35 psychiatric examination. *See id.* But whether a court could force a plaintiff to undergo such an exam when he or she does not allege psychological harm, but only typical negative emotions that obviously flow from the defendant's alleged misconduct, is itself open to debate. *See, e.g., Chadwell v. United States*, No. 20-1372-JWB-BGS, 2023 WL 6664986, at *2 (D. Kan. Oct. 12, 2023) ("Garden-variety emotional distress claims do not typically place a plaintiff's mental condition in controversy for purposes of ordering a Rule 35 exam."); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 121 (1964) ("The 'good cause' and 'in controversy' requirements of Rule 35 make it very apparent that sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident … and a general charge of negligence is lodged."). The *Taylor* court thought it significant that the *Oberweis* court "was well-aware of the three different approaches adopted by various courts," as shown by the court's citation to a law review article that discussed those approaches. *Taylor*, 2016 WL 5404603, at *3. But given the Seventh Circuit's knowledge of the three approaches, it seems more likely it would have expressly rejected the "garden variety" emotional distress variant if that had been its intent. The court's failure to even mention the term "garden variety" notwithstanding that term's widespread use by the district courts in this circuit suggests the court did not intend to address the issue.

In the end, the *Oberweis* court's cryptic treatment of the waiver issue is probably best explained by the procedural posture in which the issue was presented to the court. The district court order under review, which the *Oberweis* court said was "correct," 456 F.3d at 718, actually *adopted* the "garden variety" emotional distress theory of non-waiver. *See Doe v. Oberweis Dairy*, 1:03-cv-4774, 2004 WL 1146712, at *3 (N.D. Ill. May 21, 2024) ("[I]f a plaintiff fails to limit her emotional distress claims to 'the garden variety type of emotional distress,' the plaintiff's mental health records are at issue and not protected by the psychotherapist-patient privilege." (citing four "garden variety" emotional distress cases with approval: *Santos v. The Boeing Co.*, No. 02 C 9310 (N.D. Ill. Oct. 21, 2003); *Santelli*, 188 F.R.D. 306; *Kroka v. City of Chicago*, 193 F.R.D. 542, 544 (N.D. Ill. 2000); and *Saket v. Am. Airlines, Inc.*, No. 02 C 3453, 2003 WL 685385, at *1 (N.D. Ill. Feb. 26, 2003))). The district court granted the defendant's motion to compel because, at that point in the proceeding, the plaintiff had not appropriately limited her claim to "garden variety" emotional distress. *See id.* at *4 ("Plaintiff argues that her non-psychiatric medical condition is not at issue because she will not be producing any physicians as expert witnesses and she will not testify regarding her treatment. Plaintiff, though, claims that she was subjected to substantial and irreparable injuries, pain and suffering, and an assault and battery."); *see also Doe v. Oberweis Dairy*, 1:03-cv-4774 (N.D. Ill.), DE 26 at 5-7 (Def. Reply in Supp. of Motion to Compel, Apr. 13, 2004). The procedural history gets complicated because the plaintiff sought to appeal the district court's order compelling production of her psychiatric records, and, as a result, the Seventh Circuit temporarily stayed enforcement of the order. *See Oberweis, supra*, DE 42, 46. Simultaneously with seeking the appellate court's intervention on the issue, the plaintiff filed a motion in the district court asking for clarification of the order compelling production of her psychiatric records, asserting that she *had* in fact limited her damages claim. *See id.*, DE 38 (Motion for Clarification and/or Reconsideration, May 27, 2004). The interlocutory appeal was dismissed for lack of jurisdiction, *id.*, DE 68, and the district court then responded to the plaintiff's clarification motion by ordering her to submit a specific statement of her proposed testimony on the issue of pain and suffering.

Defendant makes about the "garden variety" line of cases is that they "do not apply to the case at hand given the nature of damages the Plaintiff claims." [DE 48 at 5]. In support of that argument, Defendant cites Plaintiff's initial disclosures indicating that she is seeking pain and suffering damages, including mental anguish, "in excess of

_See id._, DE 69 at 2 (Order, Aug. 30, 2004). Following the plaintiff's submission, _id._, DE 74 ( Statement of Proposed Testimony, Sept. 17, 2004), the district court revised its previous order compelling production of the plaintiff's psychiatric records, holding that the plaintiff's testimony at trial would be limited as set forth in her statement and that the confidential communications between her and her psychotherapist would remain protected from discovery. _See id._, DE 90 (Docket Entry Order, Nov. 9, 2004). Later, the district court entered summary judgment against the plaintiff and the plaintiff appealed that order, along with the earlier discovery order to compel from which her interlocutory appeal had been dismissed. The Seventh Circuit was aware of this procedural history when it issued its ruling. _See Oberweis_, 456 F.3d at 708 (noting that the plaintiff's psychiatric records were not turned over because, when the plaintiff's objections to the district court's order granting the defendant access to those records was rejected, the plaintiff "trimmed her evidence of emotional distress").

 Although they are omitted from the opinion, the above procedural details concerning the plaintiff's "trimming" her evidence are crucial to understanding the scope of the Seventh Circuit's opinion. As far as the record shows, the defendant did not cross-appeal from the district court's second order in the plaintiff's favor, which allowed the plaintiff to "trim" her evidence of emotional distress and thereby maintain her right to assert privilege over her records. (In fact, the record indicates that the "garden variety" approach, which the district court ultimately adopted, was the approach that the defendant approved of and affirmatively advocated for all along (albeit objecting at various points to whether the plaintiff had adequately "trimmed" her claim), whereas the plaintiff had been advocating for an approach that seemed to track more closely the narrow view of waiver. _See, e.g._, _Oberweis, supra_, DE 235 (Def. Motion _In Limine_ To Bar Evid. of Psychological Damages, June 25, 2007); _id._, DE 241 (Def. Reply in Supp. of its Motion _In Limine_, Aug. 20, 2007)). Because there was no cross-appeal, the "garden-variety" limitation in the district court's modified discovery order would not have been presented for the Seventh Circuit to pass on. In other words, the Seventh Circuit's holding that the district court "was correct to allow the defendant access to the plaintiff's psychiatric records," 456 F.3d at 718, has to have been in reference to the district court's original discovery order from which the plaintiff had appealed, and that order held only that there was a waiver because the plaintiff's emotional distress damages claim was not limited to the "garden variety" kind. (The Seventh Circuit apparently did not think the original discovery order was moot, notwithstanding the subsequent modified order in favor of the plaintiff's "trimmed down" emotional distress claim, because a potential appellate ruling reversing that original order would have entitled the plaintiff on remand to maintain the privilege _without_ limiting her emotional distress claim to garden-variety only). In short, from the procedural history it seems apparent that the _Oberweis_ decision represents no more than a rejection of the narrow view of waiver. _See, e.g._, _Jakes v. Boudreau_, No. 19 C 2204, 2020 WL 5297007, at *2 (N.D. Ill. Sept. 4, 2020) ("The Court reads _Oberweis_ as requiring less to waive a plaintiff's psychotherapist-patient privilege than the narrow approach's mandate that the plaintiff actively use his treatment provider's records or testimony in the litigation."). Beyond that, the _Oberweis_ court did _not_ make any determination as to whether a "trimmed down" garden-variety emotional distress claim also results in a waiver; indeed, the court would not have had appellate jurisdiction to address that issue.

20

$25,0000." He also quotes extensively from Plaintiff's deposition testimony. In response, Plaintiff argues that her deposition testimony should not be controlling because she was only responding to questions asked by Defendant's counsel.[15] She says that questions at her deposition about the value of her claims were inappropriate because that is a legal issue, so her response should be disregarded. And she claims the allegations in her complaint may be more broadly worded than intended because they were drafted by previous counsel, but her current counsel will amend those allegations if necessary. She represents that she has no intention to testify to some of the matters relating to her mental health that were elicited at the deposition by opposing counsel's questions, and that she "agrees she is barred from testimony beyond garden variety stress." [*Id.* at 3]. She concludes that Defendant is not entitled to discovery that would be relevant only to a damages claim that she has no intention of presenting.

The Court agrees that Plaintiff is in control of the damages she intends to seek, and that her deposition testimony is not necessarily dispositive if answers were elicited by defense counsel's questioning on matters to which she will not testify on direct examination during trial.[16] As one court explained, "[a]lthough Plaintiff's complaint and answers to written discovery suggested a more expansive emotional damages claim, … Plaintiff[ ] now agrees to limit h[er] claim to 'garden variety' emotional

---

[15] Plaintiff describes the deposition questioning as "emotional abuse" and "an awful misuse of a federal deposition process" [DE 50 at 1], but that rhetoric is distracting from the relevant issue of whether Plaintiff's deposition testimony should control the outcome of the parties' discovery dispute.

[16] Contrary to Plaintiff's arguments, however, the Court does not think Defendant can be faulted for having asked questions at Plaintiff's deposition based on damages claims that Plaintiff admits are suggested in the way the current complaint is drafted.

distress. This is a permissible tactic that operates as a waiver of a broader claim." *Ikumen*

*v. Bayview Loan Servicing, LLC,* No. 17-CV-4822, 2018 WL 7891978, at *1 (N.D. Ill. July 27,

2018). In other words, regardless of what her initial disclosures or deposition testimony

may show, Plaintiff states that she is *now* asserting the following:

> Plaintiff agrees that she is barred from testimony beyond garden variety stress. In support, *see Taylor v. ABT Electronics, Inc* 2007 WL 1455842 (N.E. Ill, 2007), for example in which the district court found that the defense was not entitled to depose plaintiff's doctors because plaintiff withdrew her claim of emotional distress, other than garden variety damages.
>
> Plaintiff Hess has no intent to testify to sleeplessness, nervousness, depression or anxiety. Defendant's citation to *Flowers v Owens*, 274 F.R.D. at 218, 220 (N.[D]. Ill 2011) (citing *Santelli v. Electro-Motive*, 188 F.R.D. 306, 310 (N.[D]. Ill 1999) is on point. She has an intention to testify as to how the molestation made her feel as a schoolgirl set up for a rape by a police officer, etc. She can say that her bodily integrity was infringed up[on] when he touched her and that she was terrified. She can equally say she felt embarrassed and humiliated. At trial, Plaintiff will testify that she was a minor on a high school field trip of sorts and was sexually assaulted by a uniformed on-duty Hammond, Indiana Police officer to include he brought her to a place and made her think that he and another Hammond officer would possibly rape her. Essentially, Plaintiff tells this story to the jury (or at a bench trial) then sits down following cross examination.

[DE 50 at 3-4].

Defendant asserts that Plaintiff cannot "hamper his ability to discover the

records sought" by limiting her claim. [DE 48 at 3]. But the Court disagrees. "Still in

discovery, it remains at this time the plaintiff's strategic decision whether to limit

damages to 'garden-variety' and thereby maintain the psychotherapist-patient

privilege." *Cain,* 2012 WL 6720597, at *4.[17] Furthermore, courts have held that such a self-imposed limitation "*operates to limit the scope of discovery on that claim.*" *Ikumen,* 2018 WL 7891978, at *1 (emphasis added). "[W]hen a plaintiff limits his or her claim to 'garden variety' emotional distress damages, courts should not permit 'their whole life [to] become[ ] an open book' through invasive discovery requests." *Id.* (quoting *Taylor v. ABT Electronics, Inc.,* 2007 WL 1455842, at *3 (N.D. Ill. May 14, 2007)). This approach makes "sense … given the heightened attention to limiting discovery to what is 'proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

Defendant argues that "[r]estricting the discovery of the Plaintiff's records would render the defense helpless and without evidence to contest the source of her anxiety, depression, fear, etc. Even the Plaintiff breaking down on the witness stand and crying, as she did during her deposition, would leave Defendant compromised at trial." [DE 48 at 7]. In the first place, in limiting her emotional distress claim, Plaintiff is agreeing to testify only to the emotions she experienced as a result of Defendant's conduct, which would not include any clinical depression that followed the incident but might include anxiety or fear that she felt during the ride-along.

---

[17] The Court realizes that Plaintiff has already been deposed. But Plaintiff's post-deposition decision to limit her emotional distress damages claim to "garden variety" stress does not necessarily entitle Defendant to re-depose her. The issue need not be resolved at this time. The Court only notes that Defendant should have full disclosure of what Plaintiff's direct examination testimony will be regarding her emotional distress from Plaintiff having been required to commit to it in writing as discussed herein. If Defendant's counsel's cross-examination on that issue at a second deposition were to open the door to testimony beyond Plaintiff's statement of her direct examination testimony, that would not necessarily mean Plaintiff waived the privilege because those matters would have been testimony elicited by Defendant.

Beyond that, Defendant's assertion that he needs Plaintiff's medical records to defend against any emotions Plaintiff might display while testifying ignores the theoretical underpinnings of the privilege. Defendant appears to be arguing that he needs Plaintiff's therapy records to be able to argue to the jury that Plaintiff's emotions in the present are being caused by something other than how she feels about testifying about what happened during the ride-along. But the Supreme Court made clear that "this Court is not to balance [Plaintiff's] interest in the privacy of [her] psychological records against the need for the psychotherapist-patient communications by the Defendant[ ]." *Awalt v. Marketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012). "Thus, the alleged interest of justice served by allowing [Defendant] to compel disclosure of [Plaintiff's] psychological records to present the theory that [Plaintiff's display of emotions while testifying] [is] in fact caused by [some other mental health issue or incident that happened to her] must not be balanced against [Plaintiff's] privacy interest in maintaining the confidentiality of [her] psychological records that are protected by the privilege." *Id.* Access to Plaintiff's therapy records turns not on their asserted relevance to a claim or defense but on whether Plaintiff has placed her psychological state at issue in the litigation, and thereby waived the privilege. *Id.* The Court does not think that a plaintiff places her psychological state at issue by "breaking down on the witness stand and crying," presumably from the emotions she is feeling that moment for whatever reason.[18]

---

[18] Defendant is free of course to challenge Plaintiff's emotions with relevant non-privileged evidence. *See Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 607 (D. Nev. 2016) ("CCSD will have the opportunity to

Defendant also argues that it is not possible for Plaintiff to limit her claim to "garden variety" emotional distress. *See* [DE 48 at 5 ("Without arguing severe emotional harm, [Plaintiff's] damage request is not *ad quod damnum*")]. It appears that Defendant is attempting to fit within the alternative holding in *Taylor*, where the plaintiff sought emotional damages for "substantial" emotional pain by 'losing 20 years in the prime of his life' through his wrongful incarceration." *Taylor*, 2016 WL 11945123, at *8. The court held that the plaintiff's "allegations of severe and long-lasting emotional distress cannot fairly be characterized as simple garden variety distress." *Id.* But the facts of this case are not like those in *Taylor* or other cases like it.[19] This case involves a single incident,

---

test Roberts' claims under oath, explore the alleged severity of his distress, any physical or emotional manifestations of his distress, [and] whether any other stressors in his life may have contributed to his distress[.]").

[19] *See, e.g., Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2021 WL 84531, at *9 (N.D. Ind. Jan. 11, 2021) (finding that the plaintiff's allegations "extend well beyond 'garden variety' emotional distress damages," where the plaintiff testified that he has not worked since 2018 due to severe anxiety, that this anxiety made it difficult for him to perform menial tasks, that he sees a counselor to treat this anxiety, as well as depression, and that he lays the blame for his difficulties in this area squarely at the defendants); *Jakes*, 2020 WL 5297007, at *3 ("Plaintiff alleges long-lasting effects from Defendants' actions and from being wrongfully incarcerated for 20 years, including 'extreme suffering, humiliation, fear, nightmares, anxiety, depression, and despair.' These allegations go beyond the ordinary emotional effects a plaintiff might allege; they are far more akin to 'symptoms and conditions' that Plaintiff developed as a result of Defendants' conduct." (internal citation omitted)); *Coleman v. City of Chicago*, No. 1:17-CV-08696, 2019 WL 7049918, at *2 (N.D. Ill. Dec. 23, 2019) ("Coleman was incarcerated for 23 years for a crime that he claims he did not commit. It is hard to conceive of any situation in which these emotional damages claims constitute 'garden variety.'"); *Johnson v. Rogers*, No. 1:16-CV-02705-JMS-MPB, 2018 WL 2327713, at *5 (S.D. Ind. May 23, 2018) (where the plaintiff sought damages for mental distress due to "permanent injuries" and his witness list included "any and all" of his mental health professionals); *Walti v. Toys R Us*, No. 10 C 2116, 2011 WL 3876907, at *2 (N.D. Ill. Aug. 31, 2011) ("Walti specifically seeks damages for a psychological condition, namely post-traumatic stress 'syndrome.' Hence, Walti's emotional injuries rise above mere humiliation and embarrassment and amount to more than a 'garden variety' emotional distress claim."); *objections overruled*, No. 10 CV 2116, 2011 WL 4715198 (N.D. Ill. Oct. 6, 2011); *Flowers*, 274 F.R.D. at 221-22 (where, after limiting his claim to "garden variety," the plaintiff announced that he planned to introduce evidence at trial that he "'does not want to leave his home because he's afraid of the defendants,' whom he believes will retaliate against him," and "[d]uring the deposition, plaintiff's counsel was emphatic that his client 'suffers from a psychological condition' and has 'psychological issues'").

which, if it occurred, likely provoked feelings such as humiliation, fear, embarrassment, or disgust, but not necessarily severe, lasting psychological trauma. Therefore, the Court disagrees that it would be impossible for Plaintiff "to 'cabin' h[er] testimony" to transform the alleged emotional distress into garden variety distress by altering or excluding some of the evidence." *Taylor*, 2016 WL 5404603, at *9. Defendant asserts that "Plaintiff's *entire* claim is for emotional damages stemming from this incident. Plaintiff admits that she suffered no physical pain, no medical bills and she has no other tangible damages." [DE 48 at 3 (emphasis in original)]. But as the *Santelli* court said, cabining her previously broader emotional distress claim "may be a meager victory for" Plaintiff, since "[b]are testimony of humiliation or disgust may prevent her from fully recovering for her alleged emotional distress. She may be better off disclosing her psychological records, which would allow her to make a broader damage claim." 188 F.R.D. at 309. Yet "[t]he choice … is hers." *Id.*[20]

The Court also does not agree with Defendant's assertion that "[e]ven with stipulations, motions in limine and instructions, there is no guarantee that Plaintiff will not stray beyond the acceptable 'garden variety' damage claim." [DE 48 at 7]. Defendant does not explain why motions in limine before trial are likely to be

---

[20] Foregoing the full measure of compensatory damages to which Plaintiff otherwise would be entitled may seem like a significant trade-off for maintaining privilege over her therapy records. But Plaintiff may be more interested in vindicating her constitutional rights than receiving monetary compensation for her losses. It is not uncommon for § 1983 plaintiffs to have suffered no compensable loss of any kind, yet still pursue vindication of their rights through an award of nominal damages only. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978). In addition, § 1983 plaintiffs may recover punitive damages for constitutional violations "upon a showing of 'evil motive or intent, or … reckless or callous indifference to the federally protected rights of others," even in cases where compensatory damages are not available. *Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

insufficient when that is the usual route for a party to ensure that objectionable or incompetent evidence is not introduced at trial. *See Taylor,* 2007 WL 1455842, at *2 (stating that the plaintiff "'agrees not to call any physicians or mental health providers as witnesses' given that she is only seeking 'garden variety' emotional distress damages," and that, "to the extent that Plaintiff seeks anything different at trial, Defendant is invited to file a motion in limine"). Although the Court acknowledges the case law pointing out that "the phrase [garden variety] is inherently imprecise, leading to 'very different notions of what could grow in the garden,'" *Taylor,* 2016 WL 11945123, at *7 (quoting *Flowers*), this case will not necessarily cause such problems. Plaintiff's statement of her proposed testimony in her reply brief (as quoted earlier) appears to sit comfortably within the contours of the definition of "garden variety" typically found in the case law.[21] In addition, the Court can minimize definitional problems by resolving any disputes as early as possible in the proceedings.

---

[21] Courts have explained that garden variety emotional distress claims involve "'generalized insult, hurt feelings, and lingering resentment' that 'do not involve a significant disruption of the plaintiff's work life and rarely involves more than a temporary disruption of the claimant's personal life.'" *Ortiz v. Potter,* 2010 WL 796960, at *3 (E.D. Cal. Mar. 5, 2010) (quoting *Javeed v. Covenant Med. Cntr., Inc.,* 218 F.R.D. 178, 179 (N.D. Iowa 2001)). The most widely cited definition in this circuit is that garden variety' emotional distress typically includes the "humiliation, embarrassment, and other similar emotions" a plaintiff may experience as a result of a defendant's conduct, but excludes "any resulting symptoms or conditions that [the plaintiff] might have suffered," such as "sleeplessness, nervousness, [and] depression." *Flowers,* 274 F.R.D. at 220 (quoting *Santelli,* 188 F.R.D. at 309); *see also McKinney v. Chi. Transit Auth.,* No. 20 C 6093, 2023 WL 5152667, at *14 (N.D. Ill. Aug. 10, 2023) ("garden variety" damages are "generally deemed to be not medical-based damages but those that relate to humiliation, embarrassment or similar emotions"); *Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC,* No. 3:17-CV-00147-RLY-MPB, 2021 WL 11961863, at *6 (S.D. Ind. Apr. 27, 2021) ("the 'most straightforward definition' of 'garden-variety' emotional damages is 'the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized' (citation omitted)).

In that regard, Plaintiff's offer to limit her damages claim did not come until her reply brief, which means Defendant has not yet weighed in on her proposed testimony. The issue needs to be resolved now rather than later, and definitely before discovery has ended. Plaintiff must commit to a fixed version of her parred down emotional distress damages claim. *See, e.g., Apollo,* 2020 WL 995094, at *2 (stating that the "plaintiff has not made any commitment on the record regarding what he will raise or get into or mention at trial," nor has he "indicated what type of materials bearing on the nature and extent of [his] injuries he will be relying on to establish his damages"); *Flowers,* 274 F.R.D. at 229 ("Without a complete explication of what it is that is being proposed by the plaintiff, it cannot be said with assurance that the trial testimony expressly envisioned by the plaintiff's counsel will, in fact, be limited to the kind of simple, usual, and ordinary emotions approved by the cases."). Nothing further may be required if Defendant finds Plaintiff's statement of her proposed damages testimony in her reply brief sufficient and otherwise acceptable. *See, e.g., Kronenberg v. Baker & McKenzie LLP,* 747 F. Supp. 2d 983, 995 (N.D. Ill. 2010) (finding plaintiff's statements on the record that he would not introduce testimony of emotional damages sufficient to maintain privilege over mental health records). The parties are encouraged to work together to come up with an appropriate method for ensuring that Plaintiff has sufficiently clarified what her testimony concerning her emotional distress will be, so that Plaintiff's trial testimony (which Plaintiff says will differ from her deposition testimony) is definite, concrete, and not a moving target. Plaintiff must also agree in writing that she will not later attempt to introduce evidence of a broader emotional distress claim or argue in

support of such a claim during trial. *See, e.g., Village at Hamilton Pointe LLC,* 2021 WL 11961863, at *6 (discussing the defendant's offer of a stipulation with language "derived directly from case law"). Plaintiff will be precluded from introducing or using evidence of emotional distress damages in motion practice, at trial, or for any other purpose, that she does not disclose.

### 2.    Plaintiff's Educational, Employment, and Medication Records

Apart from the issue of privilege, Plaintiff's motion for a protective order relies on blanket assertions of harassment combined with attacks on Defendant's counsel's motives for asking Plaintiff to sign the releases. Despite Plaintiff's failure to cite relevant legal principles and authority, the Court can understand what Plaintiff's argument is. Although "[t]he obligation to raise the relevant arguments rests squarely with the parties," *G & S Holdings LLC v. Cont'l Cas. Co.,* 697 F.3d 534, 538 (7th Cir. 2012), a "litigant['s] failure to address the legal question from the right perspective does not render [a court] powerless to work the problem out properly. A court … may and often should do so unbidden rather than apply an incorrect rule of law to the parties' circumstances." *Williams-Guice v. Bd. of Educ. of the City of Chicago,* 45 F.3d 161, 163 (7th Cir. 1995).

Rule 26(c) states that a court may limit even relevant discovery if the discovery is annoying, embarrassing, oppressive, or an undue burden or expense. In addition, Rule 26(b)(1) includes the principle of proportionality under which the court must consider "the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Plaintiff's argument, properly framed to focus on the *discovery requests* rather than *counsel's motives*, is that the discovery sought by Defendant through the releases is annoying, embarrassing, and oppressive, "designed to complicate and prolong litigation and drive up litigation costs"-- in other words, the releases represent a "scorched earth" approach to discovery. *See Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 168 (S.D.N.Y. 2012) (citing cases), *objections overruled sub nom. Moore v. Publicis Groupe SA & MSL Grp.*, No. 11CIV1279ALCAJP, 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012).[22]

Some courts have shown special concern for annoying, embarrassing, or oppressive discovery in the context of a sexual harassment or assault case such as the present one.[23] For instance, in *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287 (8th Cir. 1997), the plaintiffs labeled the defendants' discovery requests "scorched earth," where they sought information about the plaintiffs' personal background relating to events that

---

[22] Although this description suggests a certain motivation, a court does not start out by evaluating a party's motive and from there conclude the discovery is improper, which is the approach Plaintiff seems to have taken. Instead, the court begins by evaluating the "tactic" in question, i.e., here, the discovery requests to which Plaintiff objects, under applicable legal standards, i.e., here, relevance and proportionality as well as whether the requests are annoying, embarrassing, or oppressive. Plaintiff mostly ignores these inquiries, despite citing *Eggleston v. Chic. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 897-99 (7th Cir. 1981), a case in which the Seventh Circuit conducted a thorough, independent examination of defense counsel's deposition questioning before concluding that it was excessive, burdensome, unnecessary and intrusive.

[23] It bears noting, however, that "scorched earth" discovery tactics are not the exclusive domain of defendants in sexual harassment or assault cases; plaintiffs have been known to engage in them too. *See, e.g., Alford v. Rents*, No. 08-CV-0683-MJR, 2010 WL 4222922, at *1 (S.D. Ill. Oct. 20, 2010); *Sukenic v. Maricopa Cnty.*, No. CV 02-02438-PHX-CRP, 2004 WL 3522693, at *15 (D. Ariz. July 21, 2004).

allegedly affected their emotional well-being, including detailed medical histories, childhood experiences, domestic abuse, abortions, and sexual relationships. The court "agree[d] that much of the discovery (e.g., domestic abuse, earlier illnesses, and personal relationships, etc.) was not relevant or was so remote in time, that it should not have been allowed." *Id.* at 1292-93.

In *Priest v. Rotary*, 98 F.R.D. 755 (N.D. Cal. 1983), the court found that the defendant's discovery requests concerning intimate aspects of the plaintiff's life had "the clear potential to discourage sexual harassment litigants from prosecuting lawsuits such as the instant one," and that, "[f]or those more hearty souls who are determined to have their day in court, it has the potential to annoy and harass them significantly." *Id.* at 761. Therefore, the court held that even if the information sought by the defendant fell within Rule 26(b), the court had to consider whether a protective order under Rule 26(c) was appropriate. *Id.* The *Priest* court was particularly critical of the defendant's deposition questioning of the plaintiff, which sought to elicit information about the plaintiff's prior sexual relationships. *See id.* (finding "the annoyance and discomfort which the plaintiff obviously suffered as a result of defendant's inquiries unnecessary and deplorable"). Here, there has been no indication to the Court that Defendant has similarly sought to inquiry about Plaintiff's sexual history or relationships. Nevertheless, Plaintiff insists that Defendant's discovery requests are ""hurtful, shocking, and misogynist" and that Defendant "know[s] 'all to[o] well'" that female sexual assault victims may "dismiss the case or [ ] settle for nuisance money" to avoid turning over all of their personal records. *See Priest*, 98 F.R.D. at 761 ("[T]his Court is

concerned with the potential of the requested discovery to harass, intimidate, and discourage the plaintiff in her efforts to prosecute her cause.").[24]

The Court acknowledges Plaintiff's concerns in this case. *See Roberts*, 312 F.R.D. at 604 ("A change in the legal culture that embraces the leave no stone unturned and scorched earth approach to discovery is long overdue."). At the same time, defendants have a right to defend themselves. Thus, the Court's focus in resolving the parties' discovery disputes is on the degree to which the requested discovery is relevant. *See Mitchell v. Hutchings*, 116 F.R.D. 481, 483-84 (D. Utah 1987). In particular, "[w]hen a discovery request 'approach[es] the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought.'" *Priest*, 98 F.R.D. at 761 (quoting *Carlson Companies, Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1088 (D. Minn. 1974)).

---

[24] *See also Macklin v. Mendenhall*, 257 F.R.D. 596, 604 (E.D. Cal. 2009) ("Given the sensitive and potentially embarrassing nature of the information sought from Plaintiff, the fact that she is alleged to be a victim in civil action involving sexual harassment, and the policies voiced in the Advisory Comments to Fed. R. Evid. 412, … the fact that the information sought by Defendants from Plaintiff might be discoverable under Fed. R. Civ. Proc. 26(b) does not limit or absolve the Court of its responsibility to consider and fashion appropriate protective orders under Fed. R. Civ. Proc. 26(c)."); *Taylor*, 2007 WL 1455842, at *2–3 (allowing overly broad and invasive discovery in a case like this "would discourage people from coming forward to bring these kinds of [civil rights] claims if as a result their whole life becomes an open book" (internal quotation marks omitted)); *Kennedy*, 305 P.3d at 1291 ("wide-ranging inquiry into an individual's medical and psychiatric history could deter legitimate discrimination claims," and "[l]itigants should not be forced to choose between disclosing highly personal medical information and asserting claims for distress that any healthy individual would likely suffer as a result of discrimination").

*High School Records.* Defendant argues that Plaintiff's high school records are relevant because she testified at her deposition that she reported the ride-along incident to her school guidance counselor. Defendant asserts that "whether she did so and when is … relevant information as are other instances where the Plaintiff may have reported events in her life." [DE 48 at 8]. Defendant's argument about the guidance counselor does not justify a request for *all* of Plaintiff's high school record. Also, why is verification relevant in any case? And are there other ways to obtain that verification without seeking Plaintiff's high school records, perhaps by just asking the guidance counselor for verification? Moreover, the discovery does not seem reasonably calculated to achieve the asserted verification purpose: the absence of confirmation in the school records does not necessarily mean Plaintiff was lying or mistaken about reporting it; it may just mean that the guidance counselor did not record the information. Defendant's reference to "other instances" of "reported events" is too vague. What "events" or "reports" does Defendant think the records might contain? Is he just speculating that they might exist, and beyond that, if they do, how likely is it that they would be relevant to this case? Without more information, this justification sounds like a fishing expedition. *See, e.g.*, *Macklin*, 257 F.R.D. at 605 (argument that discovery requests were "relevant to claims and defenses in the action, including issues of sexual harassment, consent or welcomeness, retaliation, and emotional damages" deemed not persuasive where the defendants sought to elicit information about the plaintiff's sexual conduct, history, intentions and/or desires that occurred [outside of the incident], and that did not involve [the defendant]").

*High School, Post-High School, and Medication Records.* Defendant also argues that he "is entitled to explore [Plaintiff's] grades, attendance and other high school records to determine if they substantiate" Plaintiff's deposition testimony that "her senior year was difficult for her because of the ride-along," and that "she became suicidal and her grades severely suffered during her second semester." [DE 48 at 8]. Defendant makes a similar argument regarding Plaintiff's records from Indiana State University, asserting they are relevant because Plaintiff attended that school approximately 5-6 months after the ride-along, and dropped out after one semester, citing depression. [DE 48 at 9]. According to Defendant, Plaintiff "attributes her depression, in large part, to this incident," and Defendant "needs school records including grades and attendance to understand the implications of her claim." [*Id.*]. Defendant states that he seeks Plaintiff's prescription drug records because she testified at her deposition that she previously had taken only one medication for mental health, and that she had stopped taking it before the ride-along, but that, after the ride-along, she began taking a series of medications for depression and anxiety. [*Id.* at 10]. According to Defendant, Plaintiff was unable to testify what the medications were or when she took them, and therefore he needs these records to expose preexisting mental health conditions and to obtain details regarding the medications taken.

The stated purpose for all these records becomes irrelevant if Plaintiff limits her emotional distress damages claim to the humiliation, embarrassment, and similar emotions she felt from the incident. *See, e.g., DHL Express,* 2011 WL 6825497 (finding the defendant's argument for discovery of the claimant's employment-related records to be

"somewhat attenuated, particularly in light of the EEOC's express withdrawal of its claims of emotional distress and psychological injury, except its claim of 'garden variety' emotional injuries"); *see also Taylor*, 2016 WL 11945123, at *5 ("[A] finding of implied waiver [of the psychotherapist-patient privilege] … does not necessarily mean therapy records are produced. As in any case, production turns on the relevancy of the records."). At the very least, Defendant's request for all records showing prescription drugs Plaintiff has taken, all high school records, and all post-high school educational records is overbroad. *See Roberts*, 312 F.R.D. at 607 ("CSD's requests for medical evidence are overbroad because CCSD claims they might possibly contain some reference to Roberts' emotional distress or state of mind. The requests are not narrowly tailored to obtain this information. In fact, CCSD is requesting that the court not only compel the identification of all health care providers, but enter a qualified protective order so that CCSD can directly obtain all of Roberts' medical records from all of Roberts' health care providers who were involved in or consulted[.]").

*Employment Records.* According to Defendant, Plaintiff's "dates of employment, attendance record, and any other reports at any of her places of employment could help shed light on her claims." [DE 38 at 9]. That argument is the equivalent of saying the records are relevant because they might be relevant. *See Roberts*, 312 F.R.D. at 608 ("the court will not compel Roberts to disclose and produce all of his medical records from 2009 to the present on the speculation they may contain references to his mental state or emotional distress"). Defendant tries to be more specific, but fails, when he asserts that Plaintiff's employment records "could help reveal how [Plaintiff] was getting along,

whether she explained to her employer what had happened to her with Defendant Garcia, whether she used this incident as an excuse for being tardy, for missing work, or for being distracted while on the job." [*Id.*]. What does Defendant mean by "getting along"? Why is how she was "getting along" at work relevant to an issue in this case? How would the records in any case prove that Plaintiff's reporting of the incident at work was just "an excuse" (as opposed to her actual reason for being tardy, missing, or distracted on the job)?

At bottom, what disputed issues in the case does any of the things Defendant mentions relate to? Again, Defendant's explanation sounds a lot like a fishing expedition. Moreover, a blanket records release form addressed to three employers (Black Cat Clothing Company, Miller's Merry Manor, Christos Family Dining) for whom Plaintiff presumably worked (although the Court has no idea what time periods are covered) is likely overbroad both in terms of dates and categories of records that might be obtained by the release. A broad release of Plaintiff's employment records is not justified based on Defendant's current arguments. If there are specific types of employment records in a limited period that might contain relevant information, then Plaintiff can obtain those records herself, and if a dispute arises over whether they contain relevant information, Plaintiff can submit them to the court for an ex parte in camera review. *See, e.g., Caine,* 2012 WL 6720597, at *4; *Awalt,* 287 F.R.D. at 414.

*Ancilla College.* The only potentially persuasive relevance argument Defendant puts forth concerns Plaintiff's records from Ancilla College. According to Defendant, the ride-along was assigned by Plaintiff's professor for a course Plaintiff was taking at

Ancilla College at the time. Defendant states that Plaintiff electronically submitted a final paper via Canvas about the ride-along; that she helped another girl in the class arrange a ride-along with Defendant; and that, a month or two later, she and the other girl informed their teacher and others at college about what Defendant purportedly did to each of them. [DE 48 at 8-9]. Defendant asserts, "presumably records of these contacts exist and are in the possession of the college." [*Id.* at 9].

It is not clear what "records of these contacts" Defendant has in mind. Moreover, why would a record of "these contacts" be relevant to any disputed issue in the case. Some of the information Defendant seeks might be discoverable through other, less intrusive means, such as asking the teacher and classmate directly. As far as the Court can tell based on the limited discussion of this issue, the only identifiable and potentially relevant "record" Defendant seeks is the paper about the ride-along that Plaintiff submitted as the class assignment. According to Defendant, Plaintiff was asked about the paper at her deposition but was unable to produce it because she did not retain a copy. A records request to the college for Plaintiff's paper might be relevant. Beyond that, it seems unlikely that Plaintiff's Ancilla College records as a whole contain information relevant to what happened on the ride-along.

At the end of the day, with only a sketchy outline from Defendant as to the threshold relevancy requirement in a case involving allegations of sexual harassment and sexual assault, the Court is unable to see any justification for the broad records releases sought by Defendant. It seems extremely unlikely that all of Plaintiff's employment, educational, and medical records are relevant to Defendant's defense of

Plaintiff's harassment and assault claims, whereas it is most certain that Plaintiff will suffer annoyance, discomfort, and harassment if required to provide that information. To the extent that the requested discovery would have any evidentiary value, their overly broad and intrusive nature would outweigh any such value. *See, e.g., DHL Express*, 2011 WL 6825497, at *4 (granting protective order where the defendant sought "scores of documents relating to each Charging Party — including federal and state tax returns and even personal calendars and telephone logs — the combination of which would unduly subject the Charging Parties' personal lives to judicial scrutiny, and impose an enormous burden on them and the EEOC, in a manner not relevant or reasonably necessary to the claims or defenses at issue"); *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-CV-81004, 2010 WL 623699, at *7 (S.D. Fla. Feb. 23, 2010) ("Given the tremendous burden of producing the requested information, … coupled with its tenuous connection to the issues in this case, the Court declines to compel a response to this request").

To the extent that Defendant can make an argument for the relevance of certain, specified information, the Court believes requiring Plaintiff to sign blank authorization forms to gain unfettered access to her educational, employment, and medical information is oppressive and not the appropriate route to obtain that information. Indeed, some courts have held that courts do "not have the authority — under either Rule 34 or Rule 37 — to compel a party to sign a release or authorization so that the requesting party may obtain a document directly from a non-party," and that, to the extent that the records sought by the requesting party are in the custody, control, or

possession of a non-party, the requesting party must "serve a subpoena on the non-party pursuant to Fed. R. Civ. P. 45." *Paliwoda v. Showman*, No. 12-2740-KGS, 2013 WL 3756591, at *6 (D. Kan. July 15, 2013). Other courts have held that "[t]he authority of a federal court, as part of the records request and production process under Fed. R. Civ. P. 34, to require a party to execute forms authorizing the release of relevant records in the actual possession of another is unquestioned." *Giarratano v. Huntington Ingalls Inc.*, No. CV 22-88, 2022 WL 16552816, at *4 (E.D. La. Oct. 31, 2022); *see, e.g., Hine v. Extremity Imaging Ptnrs., Inc.*, No. 1:09-cv-416-SEB-TAB, 2010 WL 3720197, at *1 (S.D. Ind. Sept. 8, 2010) (granting motion to compel requiring plaintiff to sign medical authorization form because plaintiff put medical condition at issue).[25]

But even if "the Court may compel parties to sign written authorizations consenting to the production of various documents, the Court is not required to do so. Indeed, some courts are loathe to do so." *Peterson v. Nw. Mut. Ins. Co.*, No. 4:13-CV-00018-RAW, 2013 WL 11872711, at *2 (S.D. Iowa Aug. 19, 2013).[26] Because the release forms are not included in the record, the Court cannot say whether they are appropriately tailored to the needs of this case, either in terms of naming specific providers likely to have relevant records or in terms of the time period for the records

---

[25] *See also Williams v. Carnival Corp.*, No. 18-21654-CIV, 2020 WL 854809, at *1-2 (S.D. Fla. Feb. 11, 2020) (citing cases compelling execution of medical release forms as well as cases that have held that courts lack the power to do so); *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-CV-2080-D, 2022 WL 1470957, at *2–3 (N.D. Tex. May 10, 2022) (discussing split on the issue among district courts in the Fifth Circuit); *Sherlock v. Fontainebleau*, 229 F. Supp. 3d 1277, 1281-82 (S.D. Fla. 2017) (same, as to district courts in the Eleventh Circuit).

[26] *See, e.g., Ramirez v. Kranski*, No. 15-cv-365-WMC, 2021 WL 1895052, at *2 (W.D. Wis. May 11, 2021) ("This is a 'direction,' not an 'order.' This court does not compel parties in a lawsuit to disclose confidential medical or psychiatric information if they choose not to[.]"); *Pendleton v. Tilleson*, No. 18-CV-701-WMC, 2021 WL 2478515, at *1 (W.D. Wis. June 17, 2021) (same).

sought and/or date through which the release would be effective.[27] And the Court is unable to narrow the scope of the releases on the basis of what has been provided in the record.

Based on all the above, the Court finds that there is good cause for issuance of a protective order against the releases. Discovery under the federal rules is limited to matters relevant to the parties' claims and defenses in litigation. And, as Plaintiff points out, it is not obvious why her educational, employment, or medical history would be relevant to what happened between Plaintiff and Defendant on February 15, 2019. At the very least, it is not clear why *any and all* records about Plaintiff with the named entities would be relevant.

<u>Conclusion</u>

For the foregoing reasons,

1.    Plaintiff's Motion For A Protective Order **[DE 46]** is **GRANTED** without prejudice to further discovery seeking relevant and unprivileged information consistent

---

[27] *See, e.g., Williams,* 2020 WL 854809, at *3, 4 (declining to compel the plaintiff to execute a medical release authorization form because, among other things, the defendant asked the plaintiff to provide medical records that were at least six years old, without providing a "specific reason why it needs these older records … besides contending that it needs 'complete' medical records"; as a result the defendant had "failed to meet its burden to show the relevancy of" the medical records sought); *Johnson v. Rogers*, No. 1:16-cv-2705-JMS-MPB, 2018 WL 10246993, at *5 (S.D. Ind. Apr. 20, 2018) ("Defendants provide no argument as to why pre-incident medical records are relevant to their defense of this case and without a showing of relevancy, the Court agrees that the requests are historically overbroad."), *objections overruled,* 2018 WL 2327713 (S.D. Ind. May 23, 2018); *compare Wine v. Pontow,* No. 08-CV-72-BBC, 2008 WL 4933949, at *1 (W.D. Wis. Nov. 14, 2008) (granting motion to compel where defendant showed that the medical authorization release form was limited to medical entries in a specific two–month time period encompassing the date of the incident, and where the medical release form explicitly did not authorize disclosure of any medical information related to irrelevant and sensitive medical information such as HIV test results, alcohol and drug abuse treatment or developmental disability information); *DeLeon v. Rice,* No. 05-C-521, 2006 WL 1314021, at *3 (E.D. Wis. May 11, 2006) (granting in part motion to compel related to medical authorization forms, with limitation that certain aspects of the release form were overbroad).

with this opinion and order. The Court encourages both Plaintiff and Defendant to renew their efforts in cooperating in the discovery process. If the parties are unable to reach agreement on the scope of additional discovery seeking records or information through means other than release forms, they are directed to seek a discovery conference with the Court before filing any further motions to compel or motions for protective orders. The parties must **ATTACH** any disputed discovery requests to their filing seeking a discovery conference.

2.      The parties are **DIRECTED** to meet and confer over the contents of Plaintiff's proposed trial testimony regarding her emotional distress damages, as well as any limitations on Plaintiff's testimony or other evidence regarding damages to which Plaintiff must agree to preserve her psychotherapist-patient privilege. If the parties are unable to reach an agreement, they may seek further assistance from the Court. An agreed stipulation, or, in the alternative, a statement from each side setting forth the areas of disagreement, **SHALL BE FILED** on or before **June 14, 2024**. The parties are reminded of the telephonic status conference scheduled of **June 18, 2024, at 1:00 p.m.** at which time the Court will address setting new discovery deadlines.

3.      The Clerk is **DIRECTED** to amend the case caption to replace the plaintiff's initials with her full name (Zailey Hess).

SO ORDERED this 4th day of June 2024.

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge