UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZAILEY HESS,

    Plaintiff,

              v.                CASE NO. 3:21-CV-101-JD-MGG

JAMIE GARCIA,

    Defendant.

**OPINION AND ORDER**

In this § 1983 suit, Plaintiff Zailey Hess alleges that Defendant Jamie Garcia sexually harassed and assaulted her. The harassment and assault allegedly occurred when Garcia, a patrol officer with the Hammond Police Department, took Hess on a ride-along in Garcia's police cruiser for an assignment Hess was given for a class she was taking at Ancilla College. Currently before the Court is Defendant's Motion For Leave To File Plaintiff's Deposition Transcript And For Sanctions [DE 51]. As the title to the motion indicates, Garcia asks the Court for leave to file the transcript of Hess's deposition. By the sanctions portion of the motion, Garcia's counsel asks the Court to "admonish" Hess's counsel for the latter's allegedly "gross misrepresentation to the Court about what transpired during the course of Plaintiff's deposition." [DE 57 at 1]. For the reasons discussed below, Defendant's motion is denied.

**Background**

The Court's opinion and order granting Hess's motion for a protective order [DE 46] sets forth Hess's allegations and also provides some procedural history. For present

purposes, the Court's discussion of Defendant's motion will mention relevant factual or procedural details as necessary.

## Discussion

**A.     Leave to File Plaintiff's Deposition Transcript**

The Court begins with Defendant's request for leave to file the transcript of Hess's deposition. That issue was discussed in the Court's opinion and order granting Plaintiff's motion for a protective order, wherein the Court admonished the parties that they should have attached the deposition transcript to their various filings, because those filings cite, quote from, and/or rely on it. *See* N.D. Ind. L.R. 26-2(a)(2)(B)(ii) ("Discovery material must … be filed when … the material is used in a proceeding.").[1] Despite the parties' failure to comply with the Local Rules, however, and even though the deposition transcript was not in the record, the Court determined it could resolve the protective order motion without consulting or relying on the transcript. The Court now chooses to resolve Defendant's motion for sanctions in the same way.

At first blush, that may seem impossible. Defendant argues about what "[a] review of the deposition transcript would show" [DE 57 at 3], and his motion specifically asks the Court to "review the [deposition] transcript, note the divergence of truth for the Record and Sanction Plaintiff's Counsel for his lack of candor to the tribunal" [DE 52 at 3]. And Hess's counsel has responded to Defendant's objections about his characterization of the deposition by stating that the transcript "speaks for

---

[1] The Court also pointed out in its opinion and order granting Plaintiff's motion for a protective order that the present motion violates N.D. Ind. L.R. 7-1(a), which required Garcia to have filed two separate motions, one requesting leave to file the deposition transcript and the other requesting sanctions.

2

itself." [DE 50 at 3]. The Court finds it inexplicable that both parties expressly tell the Court to read the deposition transcript, while not giving the transcript to the Court so it could do that. Hess's counsel offered up proof of his version of what happened at the deposition by including long excerpts in his response brief, which the Court assumes by the citations are direct quotes from the transcript. *See* [DE 55 at 3, 4, 6, 8-10]. But again, the Court cannot verify that the quotes are accurate. The Court reiterates its frustration that neither party consulted the Local Rules carefully enough to realize that prior leave to file the transcript was not necessary, and that both sides in fact had a duty to ensure that the transcript of the deposition was in the record by the time the Court took up the motions for ruling.[2]

Nevertheless, the Court sua sponte denies either party leave to file the deposition transcript *nunc pro tunc* as part of previous filings to which it should have been attached originally. The filing of the deposition for that purpose is now moot, given the Court has already resolved the motion for which the transcript should have been filed. In addition, the Court has determined that it does not need the deposition transcript to resolve the present motion, as it will not be deciding the parties' squabble over which side more accurately portrays what occurred at Plaintiff's deposition. "Judges routinely rule on discovery disputes during the course of litigation and have discretion to

---

[2] The most the Court can say is that Defendant's counsel may have misread the Local Rules, an observation that arises not from the current motion in which counsel fails to explain her request for leave to file the transcript, but instead from counsel's filing on the protective order motion where she cited to subsection (B)(i) rather than subsection (B)(ii) of Local Rule 26-2(a)(2). Plaintiff's counsel, on the other hand, gives no indication that he is aware of any potential problem with quoting extensively from a transcript (as he does), when the transcript is not in the record.

admonish or sanction counsel for their conduct." *Rogers v. Allen Superior Ct.*, No. 1:16-CV-40-TLS, 2017 WL 1133600, at *3 (N.D. Ind. Mar. 27, 2017). But this is not a discovery dispute. Indeed, counsels' bickering about how to characterize what happened at the deposition is "more suggestive of an argument in an alley than a professional undertaking." *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130 U.A.*, 657 F.2d 890, 902 (7th Cir. 1981). "A resolution of the controversy on the merits, *the legitimate controversy between the litigants*, not the lawyers, is nowhere in sight." *Id.* at 892 (emphasis added).

Garcia's counsel all but admits that her sanctions motions is an unnecessary distraction, the only purpose of which seems to be to assuage hurt feelings from accusations flung at her by opposing counsel. *See* [DE 57 at 4 (stating that Defendant's counsel is "apologetic for asking the Court to be the arbiter of this dissonance given that it is superfluous to the underlying issues of the instant case"]. While the Court intends to comment on some of the issues raised by both counsels' pettifoggery, Garcia's motion does not raise a disputed discovery issue that requires the Court to actually read the transcript. Because there is no need for the deposition transcript to be filed at this time, Garcia's request for leave to file the transcript is denied as superfluous and/or moot.[3]

---

[3] The parties are of course admonished once again to henceforth comply with the requirements of N.D. Ind. L.R. 26-2(a)(2)(B)(ii) should they cite, quote from, or rely on the deposition transcript or any other discovery material in connection with any future filing. In addition, the parties are granted leave in advance to file Hess's deposition transcript under seal. Due to its obvious sensitive nature as indicated by the parties' discussion of its contents in the current filings, the Court finds good cause, at least as a preliminary matter, to protect Hess's desposition transcript from public disclosure. *See, e.g., Equal Employment Opportunity Comm'n v. Costco Wholesale Corp.*, No. 14-cv-6553, 2015 WL 9200560, at *11 & n.6 (N.D. Ill. Dec. 15, 2015) (given the sensitive nature of the material, court allowed many of the discovery filings to be made under seal). If and when the need arises to file any discovery materials that may

### B.    Sanctions Request

Turning to the second part of Garcia's motion, his counsel's request for sanctions arises out of counsels' after-the-fact dispute over how to describe what took place during Hess's deposition. Garcia's counsel asserts that "[t]he cantankerous, abusive, harassing and judgmental sentiment that Plaintiff's Counsel attributes to Defense Counsel is absolutely, 100% fabricated by Plaintiff's Counsel." [DE 52 at 2]. She argues that she "said nothing [at the deposition] to warrant the tirade spewed in Plaintiff's [recent filings]," and that "Plaintiff's Counsel compromised his candor to this Court and fabricated a victimization of his client to inappropriately influence the Court's decision about whether routine discovery is required under the law." [*Id.* at 3]. Calling Hess's counsel's "tactic" of mischaracterizing the deposition "deplorable," Garcia's counsel asserts that Hess's counsel has "impugned and maligned Defense Counsel's character" [DE 57 at 4], and therefore should be sanctioned.

As an initial matter, when it referred earlier in this opinion to counsels' dispute over what happened at the deposition as pettifoggery, the Court had no intention to downplay or make light of Hess's feelings or perceptions regarding the deposition. If her counsel has correctly represented some of the questions that were asked of her, the Court does not doubt that the deposition would have been emotionally traumatizing for her. In addition, the Court takes seriously the concerns her counsel expresses if the majority of that emotional trauma was not from having to answer questions about what

contain sensitive material, the parties are directed to file a redacted version publicly as well as the original unredacted version under seal.

she says happened to her (discomfort from which unfortunately would be unavoidable given the general nature of her claims), but from seemingly irrelevant and invasive questioning from Garcia's counsel.[4]

Some or all of Defendant's counsel's questioning certainly does sound overbroad and oppressive,[5] although it is difficult to say for certain without reviewing the transcript. But that is unnecessary not only for the reasons previously given but also because Garcia's counsel does not appear to deny that Hess's response brief accurately quotes from the transcript or that her questioning of Hess covered the topics mentioned by Hess's counsel. Her argument, instead, is that the questions were both appropriate to ask and asked in an appropriate manner. *See, e.g.,* [DE 57 at 3 (stating that "the deposition transcript would show appropriate questioning, no badgering of the Plaintiff, sympathy when she did seem upset and the scarcity of Plaintiff's Counsel's interruptions or objections, which actually included several instances of his own joking banter")]. On whether the questions were about matters relevant to Hess's claims, Garcia's counsel explains that they were "not inappropriate" because Hess's "mental

---

[4] According to Hess's counsel, rather than "asking substantive questions germane to [Hess's] 1983 averments," Garcia's counsel spent almost the entire "nearly 7 hour" deposition probing Hess about her relationships with her father, mother, grandmother, and boyfriend. The questions included, among others, asking Hess about interpersonal problems her parents had when she was a child, what led to her parents' divorce, whether her mother was an alcoholic, whether Hess had a guardian ad litem when she was an adolescent, what caused her mother's "premature" death, whether her boyfriend had jealousy issues, why they broke up, who paid their living expenses when they were together, whether she has ever felt intimidated before, and whether she has issues with authority figures. [DE 55 at 3-10].

[5] For example, Hess's counsel calls out a particularly "lengthy, ad nauseum, unnecessary incessant questioning of Plaintiff as to her boyfriend (starting from the time period of when the two met "as kids in school") [DE 55 at 8], in which he (Hess's counsel) claims there was "a noticeable angle of trying to get [Hess] [to] testify that he [the boyfriend] physically abuses her and that she made clear he does not" [DE 50 at 2].

6

state is the sole component for which Plaintiff is seeking damages in excess of $250,000 against the Defendant." [*Id.*].

Hess's counsel disagrees on the relevancy issue because, he says, Hess is seeking only "garden variety" emotional distress damages. [DE 50 at 3]. The problem, of course, is that as far as the Court can tell Hess's counsel did not propose a "garden variety" limitation on Hess's damages until *after* the deposition took place.[6] While Hess's counsel explains that the complaint was drafted by his predecessor in an overly expansive nature than was intended, Garcia's counsel would have had every right to rely on the complaint's allegations in their then-current form when questioning Hess. In other words, it would appear that both sides bear responsibility for Hess having to endure an unnecessarily painful deposition, if that is indeed what happened.[7]

Hess's counsel also is at least partially to blame for not taking steps to protect his client from the "deposition abuse" of which he accuses Garcia's counsel. The latter asserts that Hess's counsel made very few objections during the deposition. Hess's

---

[6] Hess's counsel suggests that Garcia's counsel justified her questioning by stating that she mistakenly thought the complaint alleged a separate IIED claim. There has never been an IIED claim in the case. Whether Garcia's counsel said this, and if so, whether it was an actual mistake or just an excuse, is beside the point. The issue is noted here only because it highlights the need for counsel to communicate with each other better than they apparently have in the past. If counsel for both sides had discussed before the date of the deposition what topics each thought would be appropriate to cover at the deposition, disagreements could have been resolved ahead of time and unnecessarily invasive questioning possibly avoided.

[7] *See* [DE 50 at 1 (asserting that Garcia's counsel's conduct of the deposition amounted to "deposition emotional abuse coupled with an awful misuse of a federal deposition process"); *id.* at 1-2 (asserting that Garcia's counsel "set out a strategy to probe the innermost thoughts of a human being"); DE 55 at 2 (asserting that Garcia's counsel "set out on a course to elicit and trigger trauma and emotions" in hopes that Hess would get flustered, become confused, and break down crying (all of which Hess's counsel claims happened), with the ultimate objective of discrediting Hess); *id.* at 3-4 (calling Garcia's counsel's deposition questions "wayward," "offensive," "traumatizing," "irrelevant," and "bullying").

counsel cites in his response brief a few times when he did object, but overall appears to concede that he did not object nearly enough. He defends this failure by saying his hands were tied by Seventh Circuit precedent, citing a case decided more than forty years ago, which supposedly held it was improper to instruct a deponent not to answer an irrelevant question. In fact, the Seventh Circuit opinion in question specifically declined "to impose any particular practice on the district courts" regarding the proper response to an irrelevant question at a deposition, stating "it would be difficult to fashion a hard and fast rule to apply to all situations which did not at times have impractical side effects." *Eggleston*, 657 F.2d at 902.

It is certainly true, as the *Eggleston* court indicated, that an objection based on relevancy *usually* is not a sufficient basis to instruct a witness not to answer. *Id.* at 903.[8] And the *Eggleston* court also criticized the "wholesale practice" of instructing a deponent not to answer" irrelevant questions. *Id.* at 901. But the criticism was directed at the "965 refusals to answer" by the plaintiffs' counsel in that case, "with only a limited number of those refusals being related to the excesses [of opposing counsel's questioning] of which the plaintiffs' counsel complained. *Id.* As the *Eggleston* court observed, "[s]ome questions of doubtful relevancy may be innocuous and nothing is lost in answering, subject to objection, except time." *Id.* But in other situations, the court said, "irrelevant questions … may unnecessarily touch sensitive areas or go beyond

---

[8] An objection based on privilege, such as the psychotherapist-patient privilege discussed in the Court's opinion and order granting Hess's motion for a protective order, on the other hand, would be a sufficient basis to instruct a witness not to answer. *Eggleston*, 657 F.2d at 903.

8

reasonable limits," and in those circumstances "refusing to answer *may be justified*." *Id.* (emphasis added). The court called for "thoughtful flexibility," such that, "[i]f a particular question is important or opens up a whole area of questionable relevance, or other serious problems develop which counsel cannot solve themselves, then resorting to the court may be justified or necessary." *Id.*

Resort to the court can take the form of counsel seeking a court ruling ahead of the deposition regarding the scope of questioning that would be permitted. *See* Fed. R. Civ. P. 26(c)(1)(D) (providing that a party may seek a protective order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters").[9] Or it may take the form of terminating or limiting the deposition once opposing counsel's overreaching becomes apparent. *See* Fed. R. Civ. P. 30(d)(2)(A) ("At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."). *See Eggleston*, 657 F.2d at 901. Hess's counsel did neither of those things, even though he admits that he anticipated the possibility of Garcia's counsel asking excessive and irrelevant questions at Hess's deposition. If the deposition questioning was as offensive and over-the-top as the picture painted by Hess's counsel indicates, then he would have been justified in

---

[9] *See, e.g., Mitchell v. Hutchings,* 116 F.R.D. 481, 482-83 (D. Utah. 1987) (where plaintiffs in sexual harassment case sought a protective order prior to certain witness depositions to limit the scope of examination in those depositions, court holds that, while it was "in a position of only fashioning broad guidelines …much of the information sought by the defendants is wholly irrelevant to the issues in this litigation and beyond the scope of discovery").

seeking a mid-deposition discovery conference with the Court,[10] and, if that was unsuccessful, to terminate the deposition in order to file a motion under Rule 30(d)(2)(A). The Court is not going to review Garcia's counsel's questioning of Hess for relevancy at this point, given that the issue is water under the bridge. *See id.* at 902 ("The parties appeared before the trial judge on five occasions to report on the progress of class discovery, but plaintiffs' counsel did not move for a protective order or complain about the racial harassment now claimed on appeal."). As the Seventh Circuit said, "[e]ach counsel has the responsibility to attempt to resolve conflicts. … In the present case, plaintiffs' counsel complains here of problems neither fully nor timely brought to [this] [C]ourt's attention." *Id.* at 903-04.

Hess's counsel is also at fault for engaging in conduct that interferes with the Court's ability to ensure a "just, speedy, and inexpensive determination of" this action, *see* Fed. R. Civ. P. 1, by using unnecessarily inflammatory language directed at Garcia's counsel personally. For instance, Hess's counsel accuses Garcia's counsel of making arguments that are "disingenuous," shocking" "misogynistic" "scurrilous," "repugnant," and "outrageous." [DE 50 at 2, 4, 5; DE 55 at 2]. Hess's counsel argues his condemnation of Garcia's counsel is appropriate given "the history of this case" [DE 55 at 1], which he calls "sordid," apparently for the reason that, in past arguments when the case was on appeal to the Seventh Circuit, Garcia's counsel supposedly "characterized what happened to the Plaintiff at the hands of the Defendant 'as not

---

[10] *See Eggleston*, 657 F.2d at 904 ("If it appears that there is a significant disagreement about discovery, it may also be worthwhile to seek a discovery conference under new Rule 26(f).").

rape' [and] therefore, there was no harm to the Plaintiff," and, "[f]urthermore, … that Plaintiff's victimization was trivial (and not offensive to reasonable girls or women)." [DE 47 at 1]. The Court has no intention, however, of resolving current discovery disputes on the basis of whether Garcia's counsel did or did not overreach in unrelated arguments she may have raised while the case was on appeal. The Court of course is bound by the Seventh Circuit's opinion reinstating the complaint after the district court dismissed it for failure to state a claim for relief.[11] But the Seventh Circuit found only that the complaint plausibly alleged sexual assault,[12] and that a sexual assault by a public officer rises to the level of a constitutional violation. That ruling does not prevent

---

[11] It is true that the Seventh Circuit expressed skepticism of Garcia's counsel's attempt to minimize the behavior described in the complaint. Yet that court's reference in its opinion to a statement by defense counsel in briefing and at oral argument as being "surprising," *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023), comes nowhere near the level of opprobrium attributed to it by Hess's counsel. *See, e.g.* [DE 55 at 2, 5, 8 (asserting that the Seventh Circuit "reacted in horror" to Defendant's counsel's arguments; that the court "sharp[ly] criticis[ed] (essentially [ ] sanction[ed]) … Defendant[ ]," that the court gave Defendant's lawyers a "severe scolding"; and that the court found Defendant's lawyers' conduct "appalling")]; *see also* [DE 56-1 at 3 (stating that the Seventh Circuit "harsh[ly] sanction[ed]/admonish[ed]/scold[ed]" Defendant's attorneys)]. More importantly, the court did not reject Garcia's counsel's attempted minimization outright, stating instead that "[p]erhaps the defense might try to persuade a jury with that theory—a matter we leave to the district court in the first instance--but we continue to reject the idea that a police officer's sexual assault or sexual harassment serves any legitimate governmental interest." *Hess,* 72 F.4th at 761. In any event, Garcia's counsel can hardly be punished or criticized for making an argument on appeal that found support in prior district precedent, as the district court dismissal order indicated. None of this is relevant to the current motion, yet it is featured heavily in Hess's counsel's filings, which take great umbrage at any suggestion or argument that seeks to minimize or trivialize what occurred on the ride-along. *See, e.g.,*[DE 55 at 1-2 (arguing that Garcia's counsel has proceeded with discovery as if "the possible rape, and physical contact of [a] police officer with a minor can be 'exciting' and 'boorish'"); DE 56-1 at 2 (asserting that it is "disgusting" that Defendant's lawyers are asserting that a sexual assault on a minor by a police offer was "exciting and boorish")]]. Yet as far as the Court can tell, Garcia's counsel's argument was (and presumably still is) that Garcia's conduct was "exciting and boorish," not that rape or sexual assault is those things.

[12] Although Hess's counsel repeatedly refers to Garcia's alleged conduct as a "sexual assault," the Seventh Circuit neither found that Garcia in fact committed the acts alleged in the complaint, nor commented on whether any specific allegation met the definition of a sexual assault. Thus, Hess's counsel should be careful to avoid misrepresenting the Seventh Circuit's opinion as finding that a sexual assault occurred. *See* [DE 55 at 5 ("It is hoped that the Court does not miss that Plaintiff was a 'child'–a minor when she was sexually molested by a City of Hammond policeman")].

11

Garcia from disputing either Hess's version of what happened, or her credibility. For present purposes, the Court rejects Hess's counsel's characterizations of Garcia's counsel's arguments in favor of the disputed discovery as furthering any narrative along the lines of sexual assault on a seventeen-year-old high school student is acceptable conduct, while also confirming that Garcia is not foreclosed from using available discovery methods to seek evidence to support his presumed defense that he neither sexually assaulted nor harassed Hess, or to challenge Hess's claims of emotional distress.[13]

What does all of the above mean for Garcia's counsel's motion for sanctions? To begin with, the motion is perfunctory, with counsel's entire legal argument consisting of a single sentence in which she asserts, without case authority, that sanctions should be imposed for Hess's counsel's "lack of candor to the tribunal." There is no citation or identification of any legal rule, statute, or other authorizing principle for the issuance of sanctions. The initial filings do not even identify the specific sanction sought. "Judges are not like pigs hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The Seventh Circuit has repeatedly said that undeveloped, perfunctory, or unsupported arguments are a burden on courts and for that reason need not be considered. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *Perry v.*

---

[13] Conduct that could be considered a "sexual assault" states a claim for a constitutional violation even though it is not rape, as the Seventh Circuit held, but that holding does not foreclose the argument that such conduct is nonetheless "less offensive or traumatizing than being raped" for purposes of assessing damages, notwithstanding Hess's counsel's arguments to the contrary. *See* DE at 10 n.5 (asserting that such an argument was "morally repugnant")].

*Sullivan,* 207 F.3d 379, 383 (7th Cir. 2000); *United States v. Cusimano,* 148 F.3d 824, 828 n. 2 (7th Cir. 1998). "It is not the obligation of th[e] court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (quoting *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988)); *see also United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) ("The parties—not the courts—must research and construct available legal arguments."); *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties[.]). The motion for sanctions can be denied based on the paucity of citations to and analysis under applicable rules and/or case authority alone.

But the Court will go further by stating that Garcia's counsel appears to misunderstand the proper function of motions for sanctions. Presumably, Garcia's counsel is relying on the court's inherent authority to sanction for her motion. "A court may use its inherent authority to sanction those who show willful disobedience of a court order, act in bad faith, vexatiously, wantonly, or for oppressive reasons, for fraud on the court, delay, disruption, or hampering enforcement of a court's order." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (internal quotation marks and citations omitted). To do so, however, a court "must first make a finding of 'bad faith, designed to obstruct the judicial process, or a violation of a court order.' Mere clumsy lawyering is not enough." *Id.* (citation omitted). Garcia's counsel's reference to Hess's counsel having violated a "duty of candor to the Court" and her statement in her reply brief that she seeks an "admonish[ment] that such *misrepresentations* will not be tolerated" [DE 57

13

at 4], suggests that a factual misstatement was made in a filing. But nothing in the papers Garcia's counsel has submitted in support of her motion suggests that Hess's counsel made a false or perjurious statement of fact to the Court. What counsel is really talking about is argumentative and unflattering characterizations by opposing counsel. The Court does not condone Hess's counsel's numerous unkind and derogatory comments and accusations in his filings, and notes that "[f]lippant, unfounded accusations of misconduct demean the profession and impair the orderly operation of the judicial system. They also violate the ethical standards for lawyers practicing in this circuit." *Matter of Lisse*, 921 F.3d 629, 644 (7th Cir. 2019) (quoting 7th Cir. Standards For Prof. Conduct, Lawyer's Duties to Other Counsel at ¶4 ("We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.")); *see also In re Snyder*, 472 U.S. 634, 647 (1985) ("All persons involved in the judicial process … owe a duty of courtesy to all other participants. The necessity for civility in the inherently contentious setting of the adversary process suggests that members of the bar cast criticisms of [each other] in a professional and civil tone."). Counsel for both sides are reminded of the need for civility and professionalism in this matter.[14]

---

As former Chief Justice Warren E. Burger noted, "fixed rules of etiquette and manners are the lubricant to keep the focus of the courtroom contest on issues and facts and away from distracting personal clashes and irrelevancies." Burger, ABA Journal 2, 74 Vol. 60, p.171 (1974). "[L]itigation provides an opportunity for private parties to dispose of disputes in orderly and disciplined fashion. But the open forum which our courts provide for conflict resolution is not, nor can it ever be, a license to slander and abuse one's adversary. Such conduct diminishes the integrity of an institution whose usefulness depends upon the respect in which it is held by the public and by the lawyers who practice in it." *Van Iderstine Company v. RGJ Contracting Co., Inc.*, 480 F.2d 454 (2nd Cir. 1973).

Beyond that reminder, Hess's counsel's arguments in his filings do not reflect bad faith or an improper purpose. It is clear that Hess's counsel sincerely believes that opposing counsel's questioning at Hess's deposition was harassing and oppressive, and that sincere belief is not sanctionable conduct. *See, e.g.,LiiON, LLC v. Vertiv Grp. Corp.*, No. 18-CV-6133, 2021 WL 4963610, at *14 (N.D. Ill. Oct. 26, 2021) ("[T]his Court … finds that …[the] emails do not evidence an improper purpose. At most, they indicate a frustration on the part of LiiON that Vertiv had broken off their contractual relationship …, and that LiiON was eager to use litigation to redress the wrongs it perceived that Vertiv had committed. These emails do not exhibit sanctionable conduct."); *Diamond v. Nicholls*, 483 F. Supp. 3d 577, 598 (N.D. Ill. 2020) ("The emails cited by Sid indicate that Diamond was indeed frustrated, even angry, and that he hoped this suit would precipitate a settlement. But Diamond also repeatedly protested that he had been wronged, in the legal sense, and was seeking justice. The Court declines to find that Diamond acted out of an improper purpose. Sid's motion for sanctions is denied.").

Going forward, counsel for both sides are admonished to avoid unnecessary motions practice over discovery disputes and to instead seek a discovery conference with the Court, keeping in mind that both parties are entitled to their counsel's zealous representation "so long as counsel's actions are not irresponsible," *Matter of Lisse*, 921 F.3d at 644, and further keeping in mind that an "aggressive strategy with a colorable (if strained) basis in law and fact" should not be confused with "a lack of candor" warranting sanctions, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 584 (7th Cir. 2019). Counsel should not seek to resolve their discovery disputes

15

through sanctions motions, which "serve[ ] primarily to repeat and elaborate on the arguments made in connection with the underlying discovery dispute" and thereby needlessly multiply the submissions to the Court." *Jawbone, LLC v. Donohue*, No. 01 CIV. 8066 (CSH), 2002 WL 1424587, at *8 (S.D.N.Y. June 28, 2002). This level of response may soothe counsel's hurt feelings but does nothing to move the parties closer to resolving their discovery dispute. The Court's time is better spent addressing the actual discovery issues dividing the parties.[15]

### Conclusion

For the foregoing reasons, Defendant's Motion For Leave To File Plaintiff's Deposition Transcript And For Sanctions **[DE 51]** is **DENIED**

SO ORDERED this 4th day of June 2024.

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge

---

[15] The Court also can't help but wonder about defense counsel's strategy of filing a sanctions motion with a two-page brief asserting entitlement to sanctions based on allegedly scurrilous statements in a five-page reply brief, which unsurprisingly, ended up provoking a response from opposing counsel twice the length of the sanctions motion in which opposing counsel doubles down on his accusations, makes numerous additional scurrilous statements maligning defense counsel's character, and ends with a counter assertion that defense counsel is the one who deserves to be sanctioned. [DE 55 at 1, 3 (asserting "Defendant[']s attorneys need to be punished with the harshest of sanctions," and that "Plaintiff will file the motion shortly")]. This exchange is reminiscent of another case which was brought to the attention of this Court where the donnybrook began with a letter from one attorney to other that merely stated, "F#&% you! Strong letter to follow." This Court expects more of the lawyers who appear before it, and these legal professionals should hold themselves to a higher standard of conduct, as well. Counsel here are enjoined to review the Indiana Oath of Attorneys and, more specifically, the portion that provides, "I will abstain from offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged." Oath of Attorneys, Ind. R. Att'y Adm. & Discip. 22.