UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZAILEY HESS,

          Plaintiff,

   v.                              CAUSE NO. 3:21cv101 DRL

JAMIE GARCIA,

          Defendant.

## OPINION AND ORDER

In 2019, former Hammond police officer Jamie Garcia took high school student Zailey Hess on a police ride-along required by her criminal justice class. Ms. Hess alleges Officer Garcia sexually assaulted and repeatedly harassed her while she was with him. She sued under 42 U.S.C. § 1983 for violations of various constitutional rights. He moves for summary judgment on all claims. The court denies this motion, except in a single respect, leaving much of a deeply concerning case to proceed to trial.

## BACKGROUND

The record establishes the following facts for summary judgment, all as viewed in the light most favorable to the nonmovant. On February 15, 2019, then-Hammond Police Officer Jamie Garcia took a seventeen-year-old student (Zailey Hess) on a police ride-along during his evening shift (3:00 p.m. to 11:00 p.m.) [92-2 Tr. 38, 50; 92-3 at 1]. She was a senior at Plymouth High School who was enrolled in a criminal justice class at Ancilla College for college credit [92-2 Tr. 7-9]. The ride-along was part of the class [*id.* Tr. 42].

At the time, Ms. Hess had known Officer Garcia for approximately six years [92-3 at 1]. He had been dating her aunt over that period, and Ms. Hess was familiar with him from her visits

to her aunt's house to spend time with her daughter (Sierra Strickland), who was a few years older than Ms. Hess [92-2 Tr. 26-27; 92-5 Tr. 17; 92-6 Tr. 16]. Officer Garcia suggested that Ms. Hess could do a ride-along with him [97-7 Tr. 31]. The Hammond Police Department requires that a ride-along participant be eighteen years old or provide parental consent [*id.* Tr. 34]. Officer Garcia said in a deposition that he thought Ms. Hess was eighteen or nineteen at the time but also asked her to check with her father about the ride-along; she did, and her father reportedly didn't object [92-2 Tr. 156; 97-7 Tr. 34-35].

Officer Garcia picked Ms. Hess up at Ancilla College in his personal vehicle, and they drove about 75 miles to the Hammond Police Department [92-2 Tr. 66; 101 ¶ 12]. He was wearing a uniform and a firearm [92-2 Tr. 184-85]. On the way, Officer Garcia spoke to Ms. Hess about his sexual relationship with her aunt, reporting they "have sex all the time" [92-4 Tr. 15]. This conversation lasted between one and five minutes [92-2 Tr. 152]. At some point, Officer Garcia reached over and grabbed Ms. Hess's left thigh for a few seconds, about eight-to-twelve inches above her knee [92-2 Tr. 68, 72-73]. Ms. Hess doesn't remember what Officer Garcia was saying when this happened [*id.* Tr. 68].

Once they arrived at the Hammond Police Department, they moved to Officer Garcia's squad car [*id.* Tr. 73]. During the ride-along, Officer Garcia touched Ms. Hess's leg between five and eight more times [*id.* Tr. 151; 101 ¶ 19]. He would hold her thigh, rub it, squeeze it, then laugh [92-4 Tr. 22]. He would act like he was tickling her [92-2 Tr. 78], though Ms. Hess described it later as an "inappropriate tickle" [*id.* Tr. 153]. Each touch lasted for two to five seconds [*id.* Tr. 73, 176-77]. Ms. Hess didn't say anything about the touches because she was too scared [*id.* Tr. 78]. In a 2019 interview with Hammond Police Department Internal Affairs, Ms. Hess said she

could tell Officer Garcia touched her jokingly, but she felt weird [92-4 Tr. 22]. At a 2024 deposition, she said she didn't feel at the time that Officer Garcia was joking [92-2 Tr. 78-79].

Early in the ride-along, Officer Garcia and Ms. Hess stopped at a gas station to get something to drink [92-2 Tr. 104]. While Ms. Hess was second in line at the cashier, Officer Garcia stood behind her and brushed up against her butt twice with the back of his hand, lingering for a couple of seconds [*id.* Tr. 104, 111-14]. The contact was long enough that it felt like a touch rather than a glance [*id.* Tr. 114]. At another point in the ride-along, Officer Garcia was about to drive fast to get to the scene of a car accident; he grabbed Ms. Hess's already-fastened seatbelt from down by her left hip, pulled it up toward her right shoulder, and in doing so touched her whole left breast with the back of his hand [*id.* Tr. 88-91]. The seatbelt tightened, and he didn't hover at her breast, but Ms. Hess said later the touch was intentionally sexual [*id.* Tr. 90-91, 187].

During the ride-along, Officer Garcia put Ms. Hess in situations that focused on her sexuality. In one instance, he told Ms. Hess he would find her a prostitute, and, after twenty minutes, found and stopped his squad car near a woman working as one [92-4 Tr. 26]. Though Ms. Hess wasn't interested in prostitution or meeting a prostitute [92-2 Tr. 81-82], Officer Garcia told the woman that Ms. Hess wanted to become a prostitute and asked if she had advice for Ms. Hess [92-4 Tr. 28]. Ms. Hess told the woman she wasn't interested [*id.*]. When they left, Officer Garcia told Ms. Hess that she should have gone along with the story because it would have been "super funny" [*id.*].

Another time, Officer Garcia took Ms. Hess to a dark and secluded parking lot to write a report [92-2 Tr. 95]. There was nobody around save another police officer they had encountered earlier in the night, who was writing a report in his own vehicle; any traffic was in the distance [*id.* Tr. 95, 97]. Officer Garcia asked Ms. Hess if she thought the other officer was cute, and she

responded yes [*id.* Tr. 98]. Officer Garcia said, "I bet I could hook up that officer with you" and "I bet he would fuck you" [92-4 Tr. 17]. Officer Garcia later said to the officer in the other car, "Hey, she's single. Do you want to fuck her?" [*id.*], to which the officer responded, "No, I actually got somebody" [*id.*]. During this interaction, Ms. Hess felt threatened and was afraid Officer Garcia and the other officer would sexually assault her [92-2 Tr. 185-86]. Ms. Hess didn't feel at any point like she could jump out of the car during the ride-along because she was an hour and a half from home, didn't know where she was, and Officer Garcia was her source of transportation back [*id.* Tr. 185], though she considered asking her father or grandmother to pick her up [*id.* Tr. 149].

Throughout their time together, but mostly on the ride back to Plymouth, Officer Garcia asked Ms. Hess whether she had a boyfriend [92-4 Tr. 24-25]. Ms. Hess said her boyfriend broke up with her [*Id.* Tr. 16, 25], and Officer Garcia asked whether it was because she didn't have sex with her boyfriend [*id.* Tr. 16]. He also asked whether Ms. Hess used condoms, was on birth control, or had a sexually transmitted disease [92-2 Tr. 137; 92-4 Tr. 25-26]. The conversations lasted about five minutes [92-2 Tr. 153].

When they both arrived at her father's home, Officer Garcia gave Ms. Hess a hug outside his car [*id.* Tr. 169]. Following the ride-along, Officer Garcia sent Ms. Hess five inappropriate messages about his personal life over SnapChat, though she cannot recall the precise details [*id.* Tr. 188-89, 194]. Officer Garcia never suggested they see each other again [*id.* Tr. 194].

Ms. Hess gave a presentation in her class about the ride-along with Officer Garcia and was approached afterward by a classmate (Rylee Tostevin), who was interested in doing one too [92-9 Tr. 6-7]. Ms. Hess gave Ms. Tostevin Officer Garcia's phone number and put them in contact [*id.* Tr. 7; 92-11 Tr. 50-51]. Ms. Tostevin had many experiences on her ride-along that

were similar in tone or type to those of Ms. Hess. Officer Garcia "tickled" Ms. Tostevin's leg and, after she covered her legs, tried to touch her arm [92-9 Tr. 16]; he asked whether she was in a relationship and whether her ex-boyfriend cheated on her because she wouldn't have sex with him [97-4 at 1]; he tried to play a game with her involving removing articles of clothing [*id.* 2]; he flexed and made her touch his muscles [92-9 Tr. 16]; he asked two officers if they wanted to "fuck" her [*id.* Tr. 22; 97-4 at 2]; and he hugged her after the ride-along ended [97-4 at 2]. Even before the ride-along, he sent her inappropriate text messages [*id.*].

Ms. Hess's cousin had a boyfriend (Michael Feece) who also went on a ride-along with Officer Garcia [92-8 Tr. 9]. At the time, Officer Garcia acted as a father-figure for Mr. Feece's girlfriend—Officer Garcia was dating her mother and spoke with Mr. Feece about treating her properly and struggles from Mr. Feece's past [*id.* Tr. 12-14]. During such conversations on the ride-along, Officer Garcia would pat or squeeze Mr. Feece's leg near his knee to let him know he was supportive [*id.* Tr. 13]. There were times when Officer Garcia would stop short in his patrol car and would reach over to brace Mr. Feece [*id.* Tr. 12]. Officer Garcia introduced Mr. Feece to "working women" [*id.* Tr. 33]. Mr. Feece doesn't remember Officer Garcia ever touching his backside [*id.* Tr. 16]. Though they discussed Mr. Feece's sexual relationship with his girlfriend, the conversation was in the context of treating her properly, and there were details about that relationship Officer Garcia said he didn't want to know [*id.* Tr. 21-22].

On February 11, 2021, Ms. Hess filed this lawsuit under 42 U.S.C. § 1983 against Officer Garcia and Hammond Police Chief John Doughty alleging violations of the Fourth Amendment and Fourteenth Amendment, including due process and equal protection claims under the latter. On March 21, 2022, the court (via another presider) granted the motions to dismiss, but the case returned following an appeal. The court of appeals affirmed the dismissal of claims against Chief

Doughty and reversed as to claims against Officer Garcia. *Hess v. Garcia*, 72 F.4th 753, 768 (7th Cir. 2023). The case has since ripened to summary judgment.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

Ms. Hess alleges Officer Garcia violated her constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (1989). To establish a § 1983 claim, Ms. Hess must show she was "deprived of a right secured by the Constitution or federal law, by a person

acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). She may bring a § 1983 claim only against those "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

Officer Garcia doesn't argue that any of his alleged conduct wasn't under color of law. Instead, he presents a two-fold defense at summary judgment—that the evidence will not permit a reasonable jury to find a violation of Ms. Hess's Fourth or Fourteenth Amendment rights, or alternatively that he deserves qualified immunity.

"The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993) (quotations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and is assessed "claim-by-claim," *Mabes v. Thompson*, 136 F.4th 697, 706 (7th Cir. 2025), *cert. petition filed*, No. 25-662 (U.S. Nov. 10, 2025); *see, e.g.*, *Taylor v. Schwarzhuber*, 132 F.4th 480, 487-90 (7th Cir. 2025) (officers who stopped and frisked boy delivering holiday turkeys in a high crime area entitled to qualified immunity for equal protection claim but not Fourth Amendment claims).

For each claim, if no constitutional right was violated, there is no need for further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation can be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken considering the particular circumstances of the case. *Id.* In short, one part of the qualified immunity analysis overlaps Officer Garcia's two arguments for summary judgment—namely, that a constitutional violation cannot reasonably be found on this record. *See id.* (whether the "facts alleged show the officer's

conduct violated a constitutional right"). It makes only sense then to address this argument first, which the court can do as part of the qualified immunity analysis, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), before considering whether any right was clearly established.

A. *Violation of a Constitutional Right.*

1. *Fourteenth Amendment (Equal Protection).*

Under the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XVI, § 1; *see generally United States v. Skrmetti*, 605 U.S. 495, 509 (2025). This Equal Protection Clause effectively directs that "all persons similarly situated should be treated alike," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), or for citizens "to be free from invidious discrimination in statutory classifications and other governmental activity," *Harris v. McRae*, 448 U.S. 297, 322 (1980).

Governmental activity includes state action other than just passing a law. The Fourteenth Amendment prohibits a state actor from engaging in purposeful discriminatory conduct, and sexual harassment, sexual assault, or abusing governmental authority to further one's own sexual gratification constitutes sex discrimination. *See, e.g., Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009); *Hess*, 72 F.4th at 761; *T.E. v. Grindle*, 599 F.3d 583, 588-89 (7th Cir. 2010); *Shepherd v. Robbins*, 55 F.4th 810, 817 (10th Cir. 2022). "State-sponsored gender discrimination violates equal protection unless it serves important governmental objectives and the discriminatory means employed are substantially related to the achievement of those objectives," *United States v. Morrison*, 529 U.S. 598, 620 (2000) (cleaned up), but there are no legitimate objectives to such sexual misconduct, *see Hess*, 72 F.4th at 761. "No degree of sexual assault by a police officer acting under color of law could ever be proper." *Rogers v. City of Little Rock*, 152 F.3d 790, 796 (8th Cir. 1998).

To proceed on an equal protection claim, Ms. Hess must show that Officer Garcia purposefully discriminated against her based on her membership in a definable class. *See Hess*, 72 F.4th at 761 (gender discrimination); *Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (gender and sexual orientation discrimination); *see also Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 812 (7th Cir. 2001) (race discrimination). She must show the officer "acted with a nefarious discriminatory purpose." *Nabozny*, 92 F.3d at 453. This discriminatory purpose implies more than just an awareness of consequences, and instead that Officer Garcia "selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group" or on her particularly based on her membership in that group. *Id.* at 454; *accord Conley v. United States*, 5 F.4th 781, 789 (7th Cir. 2021).

Ms. Hess claims she was discriminated against based on her sex. Officer Garcia says only there is no evidence of discrimination, including sexual harassment or sexual assault. A reasonable jury could easily say otherwise—that Officer Garcia purposefully discriminated against Ms. Hess, based on her status as a woman, indeed a minor female, through myriad acts of sex-based misconduct, both physical and otherwise.

On this record, at least six times during the car ride to Hammond and during the ride-along, Officer Garcia held, rubbed, squeezed, or tickled her leg in ways a jury could view as sexual, either in conduct or gratification, or both. Standing in line to buy a drink at the gas station, he reportedly brushed the back of his hand against her rear twice, lingering there for a few seconds. At another point during the ride-along, he touched her breast with the back of his hand while tightening her seatbelt, intentionally and in a sexual way a jury could say. Ms. Hess's testimony would permit a reasonable jury to characterize this physical contact as sexually assaultive rather than playful, innocuous, or just incidental.

That is no less true when contextualized by overt sex-infused conversations during the trip, indeed conversations that could be viewed as nothing less than grooming of a then-minor—procuring tips from a sex worker (also a woman) reporting that Ms. Hess wanted to become a prostitute, discussing in front of this minor whether another officer might like to have sex with her in a remote location while she understandably felt threatened and scared, prying for details about her sex life or experience, probing whether her romantic struggles stemmed from insufficient or withheld sex, and inquiring whether she used condoms, was on birth control, or had a sexually transmitted disease. *See Hess*, 72 F.4th at 761; *Doe v. Smith*, 470 F.3d 331, 341 (7th Cir. 2006). Even a hug at the end of the night that might be seen on a different record as casual or innocuous might not be seen so innocently after all this in the collective. A reasonable jury could find that Officer Garcia violated Ms. Hess's equal protection rights under the Fourteenth Amendment, accepting these facts and all reasonable inferences in her favor.

The court could perhaps stop there. Though the parties debate another ride-along involving Officer Garcia and a male participant (Michael Feece), "naming a similarly situated person who was not subjected to sexual misconduct by a public official is unnecessary even at later stages of litigation." *Hess*, 72 F.4th at 760; *see also Grindle*, 599 F.3d at 588-89 (no need for comparisons between male and female victims when a jury could conclude that state actor denied girls equal protection by molesting and abusing them). "Requiring a comparator would elevate form over substance when the facts clearly suggest harassment by public officials that has no conceivable legitimate purpose," such as could reasonably be said to be true on this record. *Hess*, 72 F.4th at 761 (cleaned up). A fair-minded jury nonetheless could differentiate Officer Garcia's treatment of Ms. Hess and this other male ride-along participant in ways that favor her claim.

Officer Garcia says his behavior toward Ms. Hess cannot amount to an equal protection violation because it involved mere passing overtures, within the context of a six-year relationship, *Bohen v. City of E. Chi.*, 799 F.2d 1180, 1186 (7th Cir. 1986), and due to "factors personal to her and not because she [was] a woman," *id.* at 1187 (citation omitted). He says even Ms. Hess at one time attributed his behavior to their familiarity (when she explained why she was willing to connect another student with Officer Garcia) and not to discrimination. These arguments concerning credibility and the weight of the evidence are for the jury. *See Fletcher v. Doig*, 145 F.4th 756, 764 (7th Cir. 2025) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not functions of a judge deciding a summary judgment motion.") (cleaned up).

Officer Garcia also argues that the evidence only shows he touched Ms. Hess nine times for at most thirty-three seconds over their approximate eleven hours together, implying an insufficiently extensive amount of conduct to qualify as sexual assault. He offers no authority establishing some threshold quantity or duration of contact that would constitute sexual assault as a matter of law, and the proposition strikes as dubious and bothersome. *See Walton v. Nehls*, 135 F.4th 1070, 1073 (7th Cir. 2025) (quoting *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012)) (under the Eighth Amendment, "sexual offenses forcible or not are unlikely to cause so little harm as to be adjudged *de minimis*") (brackets omitted). Whatever line-drawing he might think to be appropriate, a reasonable jury could disagree and find that he crossed that line.

2. *Fourth Amendment (Unreasonable Seizure).*

Officer Garcia challenges Ms. Hess's claim that she was seized in violation of the Fourth Amendment. The Fourth Amendment establishes the right "to be secure in their persons, houses,

11

papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see Case v. Montana*, 223 L.Ed.2d 382, 388 (2026); *Caniglia v. Strom*, 593 U.S. 194, 197-98 (2021); *United States v. Plancarte*, 105 F.4th 996, 999 (7th Cir. 2024). To succeed, Ms. Hess must show first that she was seized, and then that the seizure was unreasonable. *See Hess*, 72 F.4th at 761; *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010).

A person is seized when a law enforcement officer's use of physical force or a show of authority restrains her freedom through means intentionally applied, *Torres v. Madrid*, 592 U.S. 306, 311 (2021); *Brendlin v. California*, 551 U.S. 249, 254 (2007), regardless of whether she is a criminal suspect, *Hess*, 72 F.4th at 762-63 (citing *Soldal v. Cook Cnty.*, 506 U.S. 56, 69 (1992)). Often the test is whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [she] was not free to leave." *Brendlin*, 551 U.S. at 255 (citation omitted); *see also United States v. Ahmad*, 21 F.4th 475, 479 (7th Cir. 2021) (calling the analysis "a highly fact-bound inquiry"). To emphasize, the law evaluates this objectively—not based on what a police officer thought or intended or even what a private citizen believed, but on "whether the challenged conduct objectively manifests an intent to restrain," *Torres*, 592 U.S. at 307; *accord Estate of Perry v. Wenzel*, 872 F.3d 439, 457 (7th Cir. 2017) ("how a reasonable person in [that] position would have understood the situation"); *see also Carlson*, 621 F.3d at 619 n.15.

This record permits a reasonable jury to find a seizure through Officer Garcia's conduct—by groping or assaulting Ms. Hess, and by holding her at a dark and secluded location in his squad car while he engaged another officer about having sex with her, nothing short of discussing a rape of a minor while she stayed there threatened and scared.

"An officer who sexually assaults someone while acting under color of law has seized the victim for Fourth Amendment purposes." *Hess*, 72 F.4th at 763. A sexual assault is no less the

application of physical force. "[T]here is nothing inappropriate or unusual in imposing virtually *per se* Fourth Amendment liability on police officers who misuse their power to . . . otherwise seize a person by committing sexual assaults." *Id.* at 764 (quoting *Rogers v. City of Little Rock*, 152 F.3d 790, 801 (8th Cir. 1998) (Loken, J., concurring and dissenting in part)). For reasons already given, a reasonable jury could find that Officer Garcia sexually assaulted Ms. Hess, so a "seizure" within the Fourth Amendment's meaning could follow.

Ms. Hess's second theory requires a more nuanced analysis, but still a jury could rationally find that Officer Garcia seized her while parked miles away from home at a secluded location without any reasonable opportunity for her just to disregard the officer and end the encounter. Rather than a seizure by physical force, Ms. Hess aims to demonstrate one by "submission to the assertion of authority," *United States v. Jones*, 22 F.4th 667, 673 (7th Cir. 2022) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)) (italics omitted), which "involves either voluntary submission to a show of authority or the termination of freedom of movement," *id.* (quoting *Torres*, 592 U.S. at 322). In making its assessment, the court considers "the totality of the circumstances, including where the interaction took place, how many officers were present, the extent to which the police presence was threatening, whether the officers made any show of weapons or physical force, the officers' language and tone, whether the officers suggested that the defendant was suspected of a crime, and whether the officers told the defendant he was free to leave." *Id.* at 673; *accord Ahmad*, 21 F.4th at 497.

Though not addressed by the parties, there seems a unique dimension to this case. Within a confined space, even one chosen by a citizen, the constitutional lens hones to "whether a reasonable person would feel free to decline the [officer's] request or otherwise terminate the encounter." *Jones*, 22 F.4th at 673 (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)); *accord*

*Hodari D.*, 499 U.S. at 628 (whether, considering all circumstances of the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business). This formulation comes from *Bostick*, in which two officers conducting a drug interdiction boarded a bus and requested a passenger's consent to search his luggage. *Bostick*, 501 U.S. at 431-32. This framework recognized that the passenger's movements already were constrained "by a factor independent of police conduct"—his free choice to travel on the bus, that then might be accompanied by an objective reticence to disembark the bus for fear that it would depart without him. *Id.* at 435-36.

Likewise here, Ms. Hess volunteered to participate in this ride-along. She was in Officer Garcia's squad car by choice, which says nothing really about any coercive aspect of the officer's conduct. *See id.* at 437. But he made the unilateral decision to drive her to a secluded lot so he could write a police report, and that is different. Where she was must be included among the totality of the circumstances. This was a dark lot, with no traffic nearby, where no one else was present, save another officer in his own squad car writing his own report. She was a minor. She was an hour and a half from home, had no idea where she was, and Officer Garcia was her only ride back. By that time, Officer Garcia had already touched her backside twice at the gas station and her leg in the car. It was within that context that Officer Garcia told Ms. Hess he could hook her up with the other officer, then asked the other officer if he wanted to sleep with her. This would be objectively threatening. A reasonable person in Mr. Hess's shoes—seventeen years old, even if entrusted to a policeman who is also her aunt's boyfriend, taken to an unfamiliar, dark, isolated location far from home, in a squad car, and offered to another officer after having already been subjected to unwanted touching—could very well not feel free to decline the officer's requests or otherwise terminate the encounter. *See Hess*, 72 F.4th at 763; *Jones*, 22 F.4th at 673.

14

Officer Garcia argues that Ms. Hess couldn't have been seized because she never asked to leave or to be taken home and because he never intended to seize her. Whether he subjectively intended to seize her or not is irrelevant to this analysis; the law cares not, so long as the seizure occurs willfully and not merely as a consequence of an unknowing act. *Brendlin*, 551 U.S. at 254; *Carlson*, 621 F.3d at 619 n.15. The court will not accept the invitation to call any assault, comments, or other conduct findable by a jury here as mere oblivious accident. Whether Ms. Hess asked to leave might be a factor to consider, but it isn't a prerequisite, *see Hess*, 72 F.4th at 763 (citing *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010)), and it doesn't alter the jury's ability on this record to reach a finding reasonably against Officer Garcia.

The same jury could also find this behavior unreasonable. When a seizure can be found, the reasonableness inquiry considers the governmental purpose served by the challenged conduct, balancing the need to seize against the seizure's invasiveness. *Hess*, 72 F.4th at 763. Though a conventional ride-along serves legitimate government interests—criminal justice education, experiential learning, public outreach, and the like—it is self-evident that asking another officer in a secluded location if he wants to have sex with a minor during a ride-along advances no such government interest. Officer Garcia suggests his physical conduct cannot have been unreasonable if Ms. Hess never voiced her discomfort; if he thinks it wise to make such a boorish argument to a jury, he would have their ears on this point. Ms. Hess presents evidence on which a reasonable jury could find a Fourth Amendment violation.

### 3. *Fourteenth Amendment (Substantive Due Process).*

Ms. Hess advances a substantive due process claim under the Fourteenth Amendment too. To note, the Fourth Amendment "will often provide the proper avenue for litigating a claim of sexual assault by an official acting under color of law," *Hess*, 72 F.4th at 764, though this

remains subject to a finding that a search or seizure has occurred, *id.*, which remains a factual question here, *see Carlson*, 621 F.3d at 621. The parties never stipulated to a seizure, and the factual discrepancies that bear on whether a sexual assault or some other seizure occurred cannot be resolved at summary judgment. Whatever sound reservations thus exist for proceeding in lieu with substantive due process under the Fourteenth Amendment, *see Graham*, 490 U.S. at 395; *Hess*, 72 F.4th at 768-69 (Easterbrook, J., concurring in part), they have not been presented today.

Officer Garcia contests Ms. Hess's substantive due process claim under the Fourteenth Amendment another way. He says his conduct was insufficiently flagrant, menacing, and coercive to shock the conscience. But this circuit has "recognized a substantive due process right against sexual assault by state actors in cases where no search or seizure occurred," rejecting the invitation to draw lines among types of sexual assault. *Hess*, 72 F.4th at 764; *see also id.* at 766, 767. A substantive due process violation occurs when a fundamental right is infringed by an abuse of government power so arbitrary and irrational that it "shocks the conscience of federal judges."[1] *Id.* at 765 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)); *accord Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024).

"Only the most egregious official conduct is arbitrary in the constitutional sense." *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002). Whether an action shocks the conscience is a matter of culpability—a question of intent, not harm. *Hess*, 72 F.4th at 765 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). For instance, an officer who unintentionally kills a motorist during a chase may not shock the constitutional conscience, though the harm is

---

[1] Based on decisions that either recognized or assumed a liberty interest in bodily integrity, *see, e.g., Vacco v. Quill*, 521 U.S. 793, 807 (1997); *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997); *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 278 (1990); *see also Washington v. Harper*, 494 U.S. 210, 221-22 (1990); *Vitek v. Jones*, 445 U.S. 480, 492 (1980); *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997), *Hess* took the next step to call this a fundamental right too.

great and absolute, *see Lewis*, 523 U.S. at 836, whereas officers who intentionally direct medical professionals to induce vomiting in a suspect to retrieve evidence will shock the conscience, *see Rochin v. California*, 342 U.S. 165, 166, 173 (1952). The degree of harm may bear on damages, but not liability.

On this record, a reasonable jury could find that Officer Garcia acted intentionally in sexually assaulting a minor. From there, this same jury could find that, no matter the lack of severity or harm he might wish to attribute to it, his conduct fell "toward the worse end of the culpability spectrum" by constituting a sexual assault that shocks the conscience. *Hess*, 72 F.4th at 766; *see also id.* at 767 (sexual assault "shocks the conscience because it is intentional and serves no governmental purpose"). Officer Garcia thus cannot claim that there was no violation of a constitutional right as a matter of law. That question must await a jury's verdict.

B.  *Clearly Established Constitutional Right.*

Having determined that a reasonable jury could find that Officer Garcia violated Ms. Hess's constitutional rights, the next step in the qualified immunity analysis is to evaluate whether each right was clearly established on February 15, 2019, considering the particular circumstances of the case. *See Saucier*, 533 U.S. at 201. "A constitutional right is clearly established for qualified-immunity purposes [when the] contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 725 (7th Cir. 2013) (quotations omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotations omitted).

The court looks to decisions of the United States Supreme Court and Seventh Circuit Court of Appeals (or other courts of appeals) to decide whether any one constitutional right has been clearly established. It must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228 (1991), which means it is "dictated by controlling authority or a robust consensus of cases of persuasive authority," *Wesby*, 583 U.S. at 63 (quotations and citations omitted); *see Estate of Davis v. Ortiz*, 987 F.3d 635, 638 (7th Cir. 2021) (same). The rule cannot merely be "suggested by then-existing precedent," but instead "must be clear enough that every reasonable official would interpret it to establish the particular rule," else not every reasonable official would know to follow it or know not doing so would effect a constitutional violation. *Wesby*, 583 U.S. at 63.

The rule cannot exist at too high a level of granularity. The "legal principle [must] clearly prohibit the officer's conduct in the particular circumstances before him." *Id.*; *see also Saucier*, 533 U.S. at 202 ("clear to a reasonable officer that his conduct was unlawful in the situation he confronted"); *Ortiz*, 987 F.3d at 638 (same). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (*per curiam*). "[A] case holding that the exact action in question is unlawful is not necessary," *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016), but the law does not "define clearly established law at a high level of generality [because] doing so avoids the crucial question whether the official acted reasonably in the particular circumstances," *McGee v. Parsano*, 55 F.4th 563, 572-73 (7th Cir. 2022) (quotations omitted). "A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Wesby*, 583 U.S. at 64 (quotations, brackets, and citation omitted).

Because qualified immunity must be assessed claim-by-claim, *see Mabes*, 136 F.4th at 706-13; *Taylor*, 132 F.4th at 487-90, the court looks to the precise rights here, cognizant of the difference between claims and legal theories, *see, e.g., Signal Funding, LLC v. Sugar Felsenthal Grais*

*& Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025). Ms. Hess carries the burden to show that each right was clearly established at the time of the alleged violation. *See Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

Officer Garcia argues no case law put him on notice that his alleged conduct would violate the Constitution. Particular to equal protection and due process claims, through the lens of the Fourteenth Amendment, Ms. Hess offers *Wudtke v. Davel*, 128 F.3d 1057, 1062-63 (7th Cir. 1997), and *Doe v. Smith*, 470 F.3d 331, 337-38 (7th Cir. 2006), which predate the ride-along and establish that sexual assault by an official acting under color of law can violate both constitutional rights. Both *Wudtke* and *Smith* involved school officials (one a dean and one a superintendent), not a police officer, but any reasonable official would understand this precedent to mean that sexual assault by a state actor would violate the Fourteenth Amendment. And a chorus of other cases persuasively echo this understanding. *See, e.g., Tyson v. Cnty. of Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) ("long recognized that physical sexual abuse by a state official violates the right to bodily integrity") (citing cases); *Haberthur v. City of Raymore*, 119 F.3d 720, 724 (8th Cir. 1997) (officer's sexual assault could violate Fourteenth Amendment even without proof of an arrest, apprehension, or special relationship); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (sexual assault that occurred when woman was not arrested or a suspect was a violation of Fourteenth Amendment); *see also Hess*, 72 F.4th at 758 ("Seventh Circuit precedents involving sexual assault by an official acting under color of law approve of the Fourteenth Amendment Equal Protection and Due Process Clause theories of liability"). Officer Garcia cannot avail himself of qualified immunity for these equal protection and due process claims.

Ms. Hess offers no such decision clearly establishing a right under the Fourth Amendment to support an unreasonable seizure claim, whether a seizure claim from the various touchings she

describes or a seizure claim from taking her, during an otherwise voluntary ride-along, to a secluded location to prepare a report and to engage in a discussion with the other officer about having sex. At the time of her prior appeal, the court of appeals noted that it had "not found a factually analogous case from this circuit addressing a Fourth Amendment theory of liability." *Hess*, 72 F.4th at 758. More than two years later, Ms. Hess still has not pointed to any case law before this ride-along clearly establishing such a Fourth Amendment right.

For her seizure claim based on sexual assault, she offers no prior controlling authority in this circuit; and even *Hess* observed that, instead of a "robust consensus of cases of persuasive authority," *Wesby*, 583 U.S. at 63, other federal appellate courts split on whether sexual assault would support an unreasonable seizure claim, *Hess*, 72 F.4th at 759 (citing cases). If courts couldn't agree at that time, and if Ms. Hess can't point to a controlling decision that says otherwise, then she has not met her burden of showing that the legal duty was settled law. Qualified immunity can be defeated without case law only in an "obvious case" in which it was readily apparent that the pertinent conduct was unlawful. *White v. Pauly*, 580 U.S. 73, 80 (2017) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (*per curiam*)). That the courts of appeals were still debating this point in 2023 demonstrates it wasn't obvious in 2019. *See Hess*, 72 F.4th at 759.

As for Ms. Hess's unreasonable seizure claim based on the secluded stop, identifying a seizure is a highly fact-bound inquiry, and her case doesn't involve so many of the common circumstances indicating a seizure—like a show of weapons or physical force, many officers, aggressive tone of voice, a direct order, or suspicion of criminal wrongdoing—that Officer Garcia would have known during a voluntary ride-along that he was seizing her within the Fourth Amendment's meaning without precedent to the contrary. *See Jones*, 22 F.4th at 673. To put a

finer point on this, Ms. Hess has not offered controlling authority or other decisional law lending a high degree of specificity to this scenario to say this particular right was clearly established.

In short, Ms. Hess is entitled a jury trial. Though her unreasonable seizure claims under the Fourth Amendment cannot proceed, she retains equal protection and due process claims under the Fourteenth Amendment to redress what she says occurred during the course of this ride-along with Officer Garcia. A reasonable jury could find that Officer Garcia violated her clearly established constitutional rights in these respects.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the summary judgment motion [91], GRANTS summary judgment only on the unreasonable seizure claims under the Fourth Amendment, and DENIES summary judgment in all other respects, finding that Officer Garcia is not entitled to qualified immunity on Ms. Hess's equal protection and due process claims under the Fourteenth Amendment. The case will proceed to trial as scheduled.

SO ORDERED.

February 3, 2026                              _s/ Damon R. Leichty_____
                                             Judge, United States District Court