UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZAILEY HESS,

               Plaintiff,

    v.                                        CAUSE NO. 3:21cv101 DRL

JAMIE GARCIA,

               Defendant.

## OPINION AND ORDER

Zailey Hess sues former Hammond police officer Jamie Garcia under 42 U.S.C. § 1983. She alleges he sexually assaulted and harassed her in violation of the Fourteenth Amendment (both equal protection and due process) when he took her on a ride-along for her criminal justice class. Officer Garcia[1] moves to exclude the testimony of Ms. Hess's proposed expert Dan Kender under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the opinion "reflects a reliable application of the principles and methods to the facts of the case" such that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (as amended). Though this analysis remains flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of reliability and helpfulness that render

---

[1] Though no longer with the police department, the court refers to him as Officer Garcia because his status as an officer during the events in question is relevant to Ms. Hess's claims.

opinion testimony admissible are well understood, *see Am. Home Assurance Co. v. Makita Corp. of Am.*, 752 F. Supp.3d 1028, 1033 (N.D. Ind. 2024) (citing *Constructora Mi Casita v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020)).

In short, the Federal Rules of Evidence balance two competing concerns: apprehension of the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination, contrary and compelling evidence, thoughtful jury instructions, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *See* Fed. R. Evid. 702; *Varlen Corp. v. Liberty Mut. Ins.*, 924 F.3d 456, 459 (7th Cir. 2019).

The court needn't conduct an evidentiary hearing for this motion, and the parties don't request one. Briefing and deposition testimony permit the court to rule. *See*, *e.g.*, *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998).

## DISCUSSION

Ms. Hess offers Mr. Kender as an opinion witness, and perhaps even a split witness to convey both facts and opinions, intending that he testify on the purposes and policies of the Hammond Police Department's ride-along program; whether Hammond officers are trained to put on or adjust the seatbelts of ride-along participants; whether Officer Garcia was trying to groom Ms. Hess sexually; and whether a jury should believe Ms. Hess's account of her ride along with Officer Garcia, and the account of another student (Riley Tostevin), whom Ms. Hess

subsequently referred to Officer Garcia for her own ride along.[2] Officer Garcia asks the court to exclude all of Mr. Kender's prospective testimony, arguing that he (1) may not testify to a witness's credibility, (2) isn't needed or qualified to testify on whether Officer Garcia's ride-along conduct was inappropriate based on Hammond's policies or a seatbelt's functionality, and (3) isn't qualified to testify on sexual grooming or the behavior of a victim of sexual assault or harassment.

Mr. Kender worked as a Hammond police officer for 28 years, including as a patrol officer, evidence technician, traffic crash investigator, accident reconstructionist, field training officer (including educating ride-along participants), law enforcement instructor, and police sergeant [94-3; 98-2]. Over that time, he participated in various law enforcement training [98-2]. He holds a bachelor's degree in computer information systems and a master's degree in cybersecurity and digital forensics. He is an assistant professor of computer science, though he has worked privately in crash reconstruction since 2000—first for another business, and for himself since 2008.

Ms. Hess disclosed Mr. Kender's report detailing his opinions about ride-alongs [94-3]. The report notes documents Mr. Kender reviewed in preparation, including documents on the Hammond Police Department ride-along program; reports from Ms. Hess, Ms. Tostevin, and Hammond Police Internal Affairs; and the depositions of Officer Garcia, Ms. Hess, Ms. Tostevin, and a third ride-along participant named Michael Feece. The report recites facts Mr. Kender identified from these documents and his insights from a 2017 article on sexual grooming. *See* Georgia M. Winters & Elizabeth L. Jeglic, *Stages of Sexual Grooming: Recognizing Potentially Predatory Behaviors of Child Molesters*, 38 Deviant Behav. 724 (2017). Finally, the report contains his analysis

---

[2] The court will discuss at the final pretrial conference proper protocols to follow to the extent the parties expect Mr. Kender to testify as a split witness. *See, e.g., United States v. Jett*, 908 F.3d 252, 269-70 (7th Cir. 2018).

and opinions about the purpose of the ride-along program and Officer Garcia's behavior during different ride-alongs. Mr. Kender's deposition was taken on June 26, 2025 [94-4].

    A. *Opinion on the Believability of Ms. Hess's and Ms. Tostevin's Accusations.*

Mr. Kender reviewed Ms. Hess's and Ms. Tostevin's recollections of their ride-alongs with Officer Garcia. Mr. Kender opines that their accusations appear genuine because fabrication tends to be more exaggerated, and that Officer Garcia's recollections strike as inconsistent. Mr. Kender reiterated these views in deposition [94-4 Tr. 55-56, 97-98]. Officer Garcia says Mr. Kender lacks the requisite qualifications in psychology or human behavior to reach this opinion and that his credibility opinion cannot help the jury. Ms. Hess addresses his qualifications but remains silent as to his helpfulness.

The latter is what prevents him from being an expert here. Qualifications aside, and those remain in doubt, an opinion witness cannot sift through the testimony of others, tell the jury whom to believe, or otherwise argue the implication of seeming inconsistencies. The jury alone performs the job of assessing the credibility of witnesses, and it needs no help. *See* Fed. R. Evid. 702(a); *Nunez v. BNSF Ry.*, 730 F.3d 681, 684 (7th Cir. 2013) ("Vouching for a lay witness is not expert testimony[.]"); *Stachniak v. Hayes*, 989 F.2d 914, 925 (7th Cir. 1993) ("credibility is not a proper subject for expert testimony; the jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury") (citation omitted). Mr. Kender acknowledges this takes no expertise beyond the common sense of each juror. In deposition, he said, "I don't think it takes an expert to look at this to determine that one person is lying and one person is telling the truth" [94-4 Tr. 99]. He's right— it's the jury's job. He may not opine about witness credibility.

B. *Opinions on the Propriety of Officer Garcia's Conduct under Hammond Police Department Ride-Along Policies and Training.*

Mr. Kender's report describes the purposes and procedures of a ride-along with the Hammond Police Department. He describes the ride-along program as fostering positive police-community relations and educating the public on police functions. Based on his prior work as a field training officer and experience leading educational ride-alongs [94-4 Tr. 85-86], he opines about the training Hammond law enforcement officers receive and the objectives they acknowledge to guide their ride-alongs with members of the public.

Insofar as he opines within these guidelines, he offers something both reliable and helpful to the jury to be admissible under Rule 702. Jurors may have early impressions about ride-alongs, or either heard of them or even participated in one, and perhaps have early impressions about their goals for both the public and police agency; but Mr. Kender would offer something specialized to understand their dynamics, objectives, and the training that goes into making sure that police officers handle them safely. Whether jurors have intuitions doesn't discount the benefit of this specialized knowledge. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020) ("opinion may overlap with the jurors' own experiences or cover matters that are within the average juror's comprehension, so long as the expert uses some kind of specialized knowledge to place the litigated events into context") (cleaned up). He has the credentials to speak to these issues, and his method of offering these opinions grows out of his training, his training of others, and the policies in place at the Hammond Police Department.

Beyond this scope of testimony and the context it provides the jury, the jury truly needs no help. Nor is there anything particularly expert about anything else. *See Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998) (opinion must be "something more than what is obvious to the

5

layperson"). Remember that the questions the jury will decide are constitutional ones—whether Officer Garcia's conduct violated equal protection or substantive due process under the Fourteenth Amendment—not whether he violated some policy or standard expected of him by the Hammond Police Department.

For instance, jurors understand driving safety and the importance of having two hands on a steering wheel (or not). Jurors can assess whether physical contact or sexualized conversations between an officer and minor passenger (or with a sex worker) are discriminatory rather than serve any legitimate government objective. Jurors understand seatbelts, pretensioning, and how to use seatbelts. To carry on with the last example, a jury is perfectly equipped to determine, without the color of so-called "expert" opinion, whether an officer's adjustment of a seatbelt in such a way as to touch a minor's breast occurred with a nefarious discriminatory purpose, *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996), or qualified effectively as sexual assault, *see Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023); *Rogers v. City of Little Rock*, 152 F.3d 790, 796 (8th Cir. 1998), or otherwise shocks the conscience to violate the Fourteenth Amendment, *see Hess*, 72 F.4th at 764; *see also id.* at 766, 767, without ever needing to know about standards on seatbelts or how he learned to drive a car. A jury can suss out whether an officer, in lieu of asking the passenger to adjust her own seatbelt, chose instead to sexually assault a minor.

Mr. Kender offers something by way of specialized knowledge to understand the objectives and training associated specifically with ride-alongs. The jury gets to decide whether Officer Garcia's conduct violated the Constitution with the aid of that context, but without need of more.

C. *Opinions on the Behavior of a Victim of Sexual Misconduct and on Sexual Grooming Behavior.*

Mr. Kender seeks to opine that Ms. Hess's account of Officer Garcia's ride-along conduct is consistent with sexual grooming by predatory child molesters. He says he bases this opinion on his training and experience as a police officer, his review of the record, and a 2017 article about grooming behaviors by predatory child molesters.

There is some confusion from the record at the start. Mr. Kender admitted under oath he was not being called to testify about sexual harassment or grooming [94-4 Tr. 84-85], though his report restated, even if briefly, the opinion (and basis for it) that Officer Garcia's behavior was consistent with grooming behavior [94-3]. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring disclosure of opinions). He was asked questions about this opinion in deposition too, so Officer Garcia did not rely on any concession and then forgo his examination of Mr. Kender's opinion. Ms. Hess adheres to the original plan (and disclosure) of using Mr. Kender on the subject of sexual grooming. Perhaps in another case, under different circumstances, this testimony would foreclose reoffering the opinion, but on this record the defense will have impeachment at its disposal. And whatever test of credibility that turns out to produce is a question of weight, not admissibility.

Officer Garcia argues that Mr. Kender lacks the necessary qualifications to testify about grooming behavior or a victim's common reactions to sexual assault. He says Mr. Kender merely read transcripts rather than interviewed or observed any witnesses, and that his opinion lacks a scientific method. Not every opinion requires a "scientific method." *See Kumho Tire Co v. Carmichael*, 526 U.S. 137, 148-50 (1999). And opinion witnesses rely all the time on transcripts rather than live interviews or personal observations; indeed, they may rely on facts outside their personal observations so long as they qualify under Rule 702 rather than Rule 701, and Officer

7

Garcia has not explained why this means that his opinions are based on facts and data so insufficient as to be unreliable. *See* Fed R. Evid. 702(b); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) ("those kinds of facts or data on which experts in the field would reasonably rely"); *see also* Fed. R. Evid. 703.

For qualifications, Ms. Hess largely cites Mr. Kender's deposition testimony that outlines, in both general terms and some specific terms, his training and thereafter his experience with "sex cases." Mr. Kender worked as a police officer for 28 years. His curriculum vitae reflects fairly standard training at the Indiana Law Enforcement Academy and at the Northwest Indiana Law Enforcement Training Center [98-2], and it seems over the years he developed particular focuses in crash investigation, forensics (including computer forensics), and training of officers. None of this screams out expertise in sexual grooming. That said, he testified that he worked traffic part of the time, but also worked patrol involving cases of child molesting, sexual battery, and rape. He received some training on sexual grooming at the academy, and he later served as a field training officer and evidence technician when he "handled a lot more of [these] cases then."

Not every sexual assault case, or even "sex case" as the question was posed in deposition, would necessarily involving grooming, but on this record the court cannot say Ms. Hess has not met her burden of showing both training and decades of experience to give Mr. Kender a fair basis to articulate an opinion about techniques for sexually grooming a minor. Law enforcement officers and agents (and others too) not infrequently testify about different things growing out of their investigative or other work experience, such as grooming, trafficking techniques, child sex abuse collection methods, and other such subjects. *See, e.g., United States v. Dingwall*, 6 F.4th 744, 753-54 (7th Cir. 2021) (grooming); *United States v. Romero*, 189 F.3d 576, 587 (7th Cir. 1999) (child

molesting); *accord United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (*modus operandi* of narcotics dealers based on training and experience in counter-surveillance).

Mr. Kender needs qualifications that "provide a foundation for him to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (citations and alteration omitted); *accord United States v. Truitt*, 938 F.3d 885, 889-90 (7th Cir. 2019). He relies on his criminal justice education, his own police officer training, his training of other officers, and experience working cases involving sexual assault or abuse to inform his opinion about certain patterns of grooming and how victims often behave in the wake of abuse (*e.g.*, self-blame, reluctance to report, and so on) [94-4 Tr. 65-67]. He posits that his experience mirrors the grooming behavior he reviewed in a published paper [*id.* Tr. 36-37]. *See* Winters and Jeglic, *Stages of Sexual Grooming, supra.* It isn't so farfetched that Mr. Kender would be proficient enough to observe grooming patterns. Whether he, as a mere officer, would be equipped to pathologize deviant behavior as "predatory child molestation"—a separate question that would require greater foundation than this record presents for him to go that far—it is often the job of law enforcement to identify suspicious or illegal conduct, or steps like grooming that might be a prelude to it. Mr. Kender hasn't specialized professionally in sex crimes or psychology, but he may speak to patterns of sexual grooming insofar as his training and experience take him.[3]

Officer Garcia also criticizes Mr. Kender's method, except that Mr. Kender outlines specific signs or dynamics of sexual grooming (something well beyond his say-so); and he thereby provides a roadmap for his application of these and his decisionmaking toward an opinion, and

---

[3] Ms. Hess alternatively alludes to the concept of a "skilled witness" and cites Indiana law (based on Indiana evidence rules). This is odd framing when the federal rules apply here. This notion of a skilled witness better captures the difference that can exist between opinion testimony under Rule 701 and Rule 702. Today's proposed testimony goes beyond just Mr. Kender's rational perceptions and purports to rely on specialized knowledge, not least the *modus operandi* of sexual grooming, so it falls under Rule 702.

decisionmaking not unlike what law enforcement officers often would make in the field. He need not (and cannot) approach this the way a Ph.D. psychiatrist might, for he isn't one. But he has outlined a method of using common behaviors or markers, from the perspective of police officer and trainer, that can be tested in crossexamination. Whatever weight it is worth as such is a question for the jury.

Aspects of grooming may be intuitive to some jurors, and jurors will need no help understanding that much of the alleged behavior would be not just unprofessional but unreasonable by a police officer to commit; but other aspects about grooming or a victim's sometimes-less-than-intuitive reactions to sexual assault will be invariably foreign to them, so this opinion about grooming will aid in their understanding of its markers and the constitutional impropriety of such behavior during a ride-along, as Ms. Hess will present the argument. To the extent reservations about Mr. Kender's qualifications remain, that is the purpose of crossexamination, or perhaps even *voir dire* before Ms. Hess tenders him as an expert.

## CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the motion to exclude Dan Kender's opinions [94].

SO ORDERED.

March 13, 2026                    *s/ Damon R. Leichty*
                                 Judge, United States District Court